KOOPMANS *v.* PARSONS.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—EVI-
DENCE—SUBCONTRACTORS.

In proceedings under workmen's compensation act, testimony
of witness who was present and heard conversation between
subcontractor and deceased at time of his employment is
admissible to establish fact that deceased was employee,
rendering principal contractor liable under Act No. 173, Pub.
Acts 1921, pt. 1, § 10 (*a*), amending workmen's compensa-
tion act.

2. SAME—WITHDRAWAL OF INSURER—NOTICE.

Where employer's insurer failed to file notice of withdrawal
as insurer with department of labor and industry, as re-
quired by Act No. 64, Pub. Acts 1919, pt. 4, § 1, and risk
was not assumed by any other insurer, it was not released
from liability, although it had taken all other necessary
steps to cancel its policy.

Certiorari to Department of Labor and Industry.
Submitted April 11, 1930. (Docket No. 72, Calendar
No. 34,744.) Decided June 2, 1930.

Anna N. Koopmans presented her claim for com-
pensation against I. K. Parsons & Son, a copartner-
ship, employer, and Continental Casualty Company
and· Union Indemnity Company, insurers, for the
accidental death of her husband. From award to
plaintiff holding Continental Casualty Company
liable, the employer and Continental Casualty Com-
pany bring certiorari. Affirmed.

*Marinus Den Herder, Ganson Taggart,* and *Fred
N. Searl,* for plaintiff.

*Dale Souter* (*Charles H. Ruttle,* of counsel), for defendants I. K. Parsons & Son and Continental Casualty Company.

*Miller & Knowles* and *Dunham & Cholette,* for defendant Union Indemnity Company.

MCDONALD, J. This is a review by certiorari of an award of the department of labor and industry.

The plaintiff is the widow of Alda Koopmans, who was killed while working as a painter on the Whalen building in the city of Grand Rapids, Michigan. I. K. Parsons & Son, a copartnership, were engaged in remodeling the building. They were operating under the compensation law. Samuel DeVries, who employed Koopmans, was a subcontractor to whom had been let the painting. He was not under the compensation law. While DeVries and Koopmans were painting on the outside of the building, the scaffolding on which they were standing gave way, and, in the fall, both were killed. As DeVries was not under the compensation law, the plaintiff filed her claim against I. K. Parsons & Son by virtue of section 10 (*a*) of part 1, of the act (as added by Act No. 173, Pub. Acts 1921, Comp. Laws Supp. 1922, § 5130 [2]) which imposes a liability in such cases on the principal contractor. The defendant Continental Casualty Company had been carrying the risk for I. K. Parsons & Son for some years. A few weeks before the accident it sought to withdraw. Through the H. W. TenBroek agency in Grand Rapids it took all steps necessary to accomplish that purpose except to file notice of withdrawal with the department of labor and industry. When I. K. Parsons & Son were notified of the withdrawal by the Continental Casualty Company, it authorized

the TenBroek agency to secure other insurance. This agency also represented the defendant Union Indemnity Company, and, it is claimed, made a preliminary verbal contract between I. K. Parsons & Son and that company by which the latter was bound on the Parsons' risk at the time of the accident. Each of the defendant companies denied liability. The main question at the hearing before the commissioner was which was liable to pay the compensation. He found that the plaintiff was entitled to compensation, and that the Continental Casualty Company should pay it. On appeal to the board, his findings were affirmed.

In addition to the legal status of the defendant companies as to the risk, an issue was raised relative to the employment of Alda Koopmans by Mr. De-Vries. It is urged that there is no competent evidence showing that he was an employee of DeVries at the time of the accident. To establish such relationship, the plaintiff called as a witness her daughter, Anna Koopmans, who testified that she was present and heard the conversation between DeVries and her father at the time of his employment. It is claimed that her testimony was hearsay and ought not to have been considered.

"It is hardly necessary to cite authorities to the obvious proposition that when proof is to be made of a parol contract, or when for other reasons the statements of a person are relevant, such statements may be proved by third persons who were present as well as by the one who used the language. In such case the statements were not hearsay, but substantive evidence." Jones on Evidence (3d Ed.), § 300.

The principal question to be considered is, Which of the defendant companies is bound to pay the com-

pensation? The Continental Casualty Company in its attempt to cancel its policy did not comply with the provision of the statute, Act No. 64, Pub. Acts 1919, pt. 4, § 1 (amending Comp. Laws 1915, § 5473), which requires a notice of the cancellation to be filed with the board ten days before it takes effect, and provides that, as far as the employees are concerned, it shall not become effective until ten days after it has been filed. It is conceded that this was not done, and that the Continental Casualty Company is liable to pay the compensation unless the Union Indemnity Company became bound by its parol agreement to take over the insurance. *Gratopp v. Carde Stamping & Tool Co.,* 216 Mich. 355.

The Union Indemnity Company was not paid any premium by the employer and did not in fact issue a policy. The claim is, that it became bound by oral contract to do so. The principal witness on this issue was Mr. James TenBroek who was called by the Continental Casualty Company. In its findings, the board said:

"We are not impressed by TenBroek's testimony, and we think his testimony indicates, especially after this accidental injury occurred, that he was attempting to fasten liability upon the Union Indemnity Company. That company had not issued any policy, nor received any premium, and the evidence shows it declined to issue a policy covering this risk."

If there is evidence in support of this conclusion, the award will not be disturbed.

It appears that the Continental Casualty Company desired to cancel its insurance because I. K. Parsons & Son were having too many losses. Mr. Chris TenBroek testified:

"We asked Mr. Winchel to call in this case simply because we had received a letter from the Con-

tinental that they wanted to get off the risk; that was our reason in asking Mr. Winchel to make his first visit. We did not want to place the risk with the Union Indemnity unless they knew the facts, and in calling Mr. Winchel, their representative, we gave him the facts and he agreed to go on the risk in spite of those facts.   *   *   *

"*Q.* In other words, you felt this was an unusual risk, and before issuing a binder or anything of that kind, you wanted to give the facts to the representative of the insurance company and let them decide whether or not they wanted to insure, is that true?

"*A.* That is it."

Mr. Winchel was a special agent of the Union Indemnity Company. He testified that when Mr. Ten-Broek applied to him for the Parsons' insurance, he told him he had no authority in the matter but would submit it to the home office at Detroit for approval or rejection. That it was submitted to the office is apparent from a letter written by the manager of the company, which reads as follows:

"October 18, 1928.

"H. W. TenBroek & Sons,

"206 Murray Building,

"Grand Rapids, Michigan.

"*Gentlemen:* I have before me the application of I. K. and C. H. Parsons for a compensation policy. I also have a letter addressed to you by the Continental Casualty Company, which is very much of interest. While I desire to help you out in this matter, yet, with this high loss record staring me in the face, I am frankly puzzled. Before reaching any decision, I would like for you to advise me definitely about the organization of Mr. Parsons. It appears to me there is a lack of management somewhere or he is not strict enough with his men or does not take the proper precautions in safeguarding them

against accidents.   Some information on this subject will be greatly appreciated.

"Yours very truly,

"F. W. ALEXANDER, Manager."

Mr. Alexander testified:

"I did not get any further information from Mr. TenBroek with reference to this risk. Not getting any additional information, I simply closed my file on the matter."

With the testimony on the other side of the issue we are not concerned, because we do not weigh the evidence.   That is the board's business.   The testimony we have referred to affords ample support for the finding of the board that the Union Indemnity Company was not on the risk at the time of the accidental injury.

The award is affirmed, with costs to the plaintiff and the Union Indemnity Company.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.