St. George CREAGHE, Appellant,

v.

IOWA HOME MUTUAL CASUALTY COMPANY, Appellee.

No. 7264.

United States Court of Appeals Tenth Circuit.

Nov. 4, 1963.

Paul C. Brown, Denver, Colo. (Wayne D. Williams and Howard E. Erickson, Denver, Colo., with him on the brief), for appellant.

John E. Walberg, Denver, Colo. (Darwin D. Coit, Denver, Colo., with him on the brief), for appellee.

Before PHILLIPS, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

The plaintiff-appellant has an unsatisfied judgment against Muril J. Osborn obtained in a damage action which arose from a collision between the plaintiff's car and Osborn's truck. In the case at bar, appellant alleges that the appellee insurance company was the insurer of Osborn's truck at the time of the accident, and seeks to collect this judgment from it. The appellee admits that at one time it issued a liability policy to Osborn, but asserts that he cancelled it shortly before the accident. Osborn was not a party to this suit and did not appear as a witness. Motions for directed verdict were made by both parties. The judge reserved his ruling and submitted interrogatories to the jury. These were answered favorably for appellant, but the court found that there was no material fact for the jury and gave appellee a directed verdict. The plaintiff-appellant has taken this appeal.

The appellant asserts that the evidence was not sufficient to show compliance with the policy provisions as to cancellation nor with the rules of the Colorado Public Utilities Commission on the subject. Appellant also urges that appellee cannot rely upon cancellation because it did not promptly refund the unearned premiums. Appellant also argues that the trial court committed error in admitting certain testimony relating to statements made by the insured on the

occasion when the cancellation purportedly took place.

The record shows that the policy in question was one which Osborn was required to have as an operator of a commercial vehicle. A copy of such policy had to be filed with the Colorado Public Utilities Commission and the policy could not be cancelled without first giving the Commission a ten-day notice. The policy states that the insured may cancel it by a surrender of the policy or by mailing notice of cancellation. The policy also provides that the premium adjustment be made as soon as practicable after cancellation becomes effective.

When one of appellee's agents wrote the policy in appellee's company, only one-half of the premium was paid to the agent. The unpaid balances were on account between the agent and the insured, and did not involve appellee. The policy was thereafter changed from time to time as the coverage expanded, and the agent retained the policy in order to make the changes. As the coverage increased, so did the premium due. Osborn sent the agent a check for a part of the balance due after the initial payment, but it was returned by the bank marked insufficient funds. The agent testified that he called Osborn about the check, and was told by Osborn that he was going to cancel the insurance and would come by to pick up the returned check. Osborn did come to the agent's office on October 19 and, in the presence of the agent and a secretary, stated he wanted the insurance cancelled immediately. The check was returned to Osborn and the agent told him he did not know whether there would be a refund or not. The policy was then in the possession of the agent because of changes in coverage mentioned above, and thus there was no change in the possession of the policy as Osborn did not have it to physically surrender it. The agent then sent the policy to the appellee insurance company and advised it of the cancellation. Appellee notified the Colorado Public Utilities Commission of the cancellation. The date of receipt of this notice was not determined, but on October 29 the Commission responded to the notice. The collision between Osborn's truck and appellant's car occurred on November 25.

Disregarding for the moment questions of admissibility, the record shows undisputed facts which establish cancellation of the policy by the insured, and a period of time greater than ten days between notice to the Colorado Commission of cancellation and the accident. The policy provisions as to cancellation were complied with because the agent already had the policy, and the testimony of the agent as to Osborn's desire is a sufficient showing of compliance under the circumstances. As mentioned above, Osborn, the one-time insured, did not testify. Angelo v. Traviglia, Ohio Com. Pl., 155 N.E.2d 717.

The record also shows that notice of cancellation was sent by the company to the Utilities Commission, and that more than ten days had elapsed thereafter before the accident took place.

The trial judge found that there was no question of fact for the jury, and with this we agree.

The appellant also urges that as a rule of equity, an insurer which fails to make a timely return of the unearned premium waives its right to assert a cancellation by the insured. The record shows that the lapse of time between the visit of the insured to the agent's office, when the agent testified the cancellation took place, and the time the premium refund of $28.58 was made, was about seven months. This is an unusually long period of time. However it is generally held that the return of premiums is not necessarily a condition precedent to cancellation. It was so held in Marchessault v. National Grange Mutual Liability Co., 229 F.2d 698 (2d Cir.); 16 A.L.R.2d 1200. The delay was explained by the company representatives as being due to the fact that ordinarily when the policy was cancelled by the insured, the refund is computed on the basis of the "short-rate charge," but in this instance, if it were so figured, the

insured would owe additional premiums because he had made only a part payment originally. So instead, it was testified that as a help to the agent, the company agreed to compute the refund on a "prorate basis" and on this basis Osborn received back from the agent $28.58. The delay was great, but it was explained and shown that the result was for the benefit of the insured. Osborn cashed the check, and there is no evidence that he protested the delay or the amount.

Appellant challenges the action of the trial court in admitting the testimony of the agent of appellee and his employee as to what took place, and what was said by the insured, on the occasion when he came to the agent's office to receive back the check. The agent's testimony and that of his employee was, as mentioned, that the insured stated he wanted the policy cancelled, also that his check for some of the premiums in addition to those initially made was then returned. Appellant asserts that this testimony was hearsay.

■ The hearsay rule does not exclude *relevant* testimony as to what the contracting parties said with respect to the making or the terms of an oral agreement. The presence or absence of such words and statements of themselves are part of the issues in the case. This use of such testimony does not require a reliance by the jury or the judge upon the competency of the person who originally made the statements for the truth of their content. Neither the truth of the statements nor their accuracy are then involved. In the case at bar we are not concerned with whether the insured was truthful or not when he told the agent he wanted the policy cancelled and that he did not need it any more. It is enough for the issues here presented to determine only whether or not he made such statements to the agent. The fact that these statements were made was testified to by the agent, and his competency and truthfulness as to this testimony was subject to testing through cross-examination by counsel for appellant, and this was done at considerable length. The

fact that the statements with which we are here concerned related to an oral termination of a written contract does not lead to a rule different from that prevailing for the formation of an oral agreement. The reasons for the rule permitting such testimony are the same in both instances.

■ This court considered closely related questions in Smedra v. Stanek, 187 F.2d 892 (10th Cir.), where it was held that testimony is not hearsay when it is to prove only that a statement was made and not the truth of the statement. The same rule was set out in Aikins v. United States, 282 F.2d 53 (10th Cir.), and in Standard Oil Co. v. Standard Oil Co., 252 F.2d 65, 76 A.L.R.2d 600 (10th Cir.), where the court mentioned that the only concern as to credibility was with the persons who had conducted a survey, and they were before the court as witnesses. See also Flournoy v. Hewgley, 234 F.2d 213 (10th Cir.), as to matters of intent. Courts from other jurisdictions have considered the question at hand in a variety of factual situations and have uniformly held that conversations as to the making and the terms of oral agreements may be testified to by any person who heard them. For example, in the case of Young v. State Farm Mutual Automobile Insurance Co., 244 F.2d 333 (4th Cir.), the action was against an insurer on an automobile policy. The questioned testimony was by insurer's agent as to a conversation between the insured and a person driving insured's car. The court held the testimony was not hearsay and was admissible to prove the understanding as to the permitted use of the car by the driver. The court said this issue could only be proved by the statements of the parties to the transaction. Thus, as in the case at bar, testimony of a party present was offered to prove an oral agreement by relating the conversation of the contracting parties. In National Labor Relations Board v. Tex-Tan, Inc., 318 F.2d 472 (5th Cir.), the testimony was of conversations during collective bargaining negotiations, which is a common type of

proof. Here the proof of words spoken is made not to establish their truth, but the fact that they were spoken. As the court said: "Anyone overhearing such words, whether a spokesman or not, is therefore a direct witness to a fact known by him and as to which he may be cross-examined." In Gyro Brass Mfg. Corp. v. United Auto., Aircraft & Agricultural Implement Wkrs., 147 Conn. 76, 157 A.2d 241, the question depended on whether certain words were spoken during a conversation, and to prove an oral modification of a written contract, testimony was offered as to the content of the conversation. The court said: "The utterances themselves were the facts in issue and could be proved through any witness who heard them spoken. That the witness through whom the proof was offered was one of the participants was immaterial." Similarly in a case concerning an oral agreement, Kansas City Southern Ry. Co. v. Keffer, 96 Okl. 63, 220 P. 361, the court said that the testimony there concerned relating what the contracting parties said was "direct evidence" of the witnesses to the verbal contract and was competent to establish the agreement. This factual situation is quite similar to the case at bar. A person present and who heard the conversation when an employee was hired was competent on the issue of employment, in Koopmans v. I. K. Parsons & Son, 250 Mich. 464, 231 N.W. 87, citing Jones, Evidence (3d Ed.), § 300. In Hartford v. Faw, 166 Wash. 335, 7 P.2d 4, a similar question arose as to whether a landlord had consented to an assignment of a lease. Appellant was prepared to testify that such consent was given during a particular conversation. The court held that such evidence was admissible, citing authorities on testimony as to oral contracts. See also Bank of America National Trust & Savings Ass'n v. Taliaferro, 144 Cal.App. 2d 578, 301 P.2d 393, where, as in the case at bar, the action was not between original parties to the contract. On the issue of whether there had been an assignment of funds due under a contract, the testimony of purported assignee as to conversation with assignor was held admissible because it was part of the formation of the contract of assignment itself. Virginia Machinery & Well Co. v. Hungerford Coal Co., 182 Va. 550, 29 S.E.2d 359.

Askins v. Easterling, 141 Colo. 83, 347 P.2d 126, was a case to impress a constructive trust on real estate, and more particularly over a conversation claimant had with the deceased concerning the manner in which the property would be owned. The court held that the trial court was correct in receiving testimony from plaintiff as to his conversation with the decedent about the purchase of the land because it was part of the original agreement. This last cited case was decided by the Colorado Supreme Court, and although not directly in point, we believe that it is an indication that the questioned testimony would be admissible in the Colorado state courts. The matter is also treated at some length in Wigmore, Evidence, § 1770 (3d Ed.).

■ The general authorities cited demonstrate that the testimony with which we are here concerned is admissible since it is part of, or is the oral agreement to cancel the insurance policy. Oral agreements can only be established by testimony as to the conversation which was had between the parties. This testimony may be given by a witness to such conversation, as was the agent of the appellee in this instance.

The testimony plus the other proof on the point provided evidence of a cancellation which was equivalent to the actual surrender of the policy then already in the agent's possession. The testimony of the agent and his employee is not contradicted; it is not inconsistent with other facts in the record. With this record before us, we cannot say that the trial court was in error in admitting the testimony in question. The trial court was also correct in directing the verdict as was done. We have considered the other points raised by appellant and find no error.

Affirmed.