HOLDEN v FORD MOTOR COMPANY

WEISS v JEWISH HOME FOR THE AGED

Docket Nos. 90345, 90144. Argued November 6, 1991 (Calendar Nos. 8-9). Decided April 21, 1992. Rehearing denied in *Weiss, post,* 1241.

Emaline F. Holden sought workers' compensation death benefits after her husband, Carl Holden, a Ford employee, died at work. Following a hearing, at which the plaintiff's experts testified that Carl Holden died of a job-related myocardial infarction and the defendant testified that his death resulted from an arrhythmia unrelated to the job, the magistrate denied benefits on the ground that the plaintiff failed to establish the requisite nexus between the claimed injury to the heart and work. The Workers' Compensation Appellate Commission, acknowledging the limited scope of administrative appellate review, concluded that because the magistrate had failed to find whether the deceased sustained cardiac damage it was incumbent on the WCAC to do so, found the requisite relationship between the cardiac damage and the deceased's work, and ruled the death compensable. The Court of Appeals, REILLY, P.J., and GILLIS and CYNAR, JJ., reversed in an opinion per curiam (Docket No. 118813). The claimant appeals.

Vera Weiss sought workers' disability compensation benefits for a work-related injury to her back arising out of her employment as a registered nurse for the Jewish Home for the Aged. Following a hearing, at which conflicting evidence was presented regarding her ability to return to work, the magistrate found that she had been temporarily disabled and entered a closed award of benefits. The Workers' Compensation Appellate Commission, acknowledging the limited scope of administrative appellate review, concluded that the magistrate's finding was unsupported by substantial evidence and modified the decision to provide an open award of benefits. The Court of Appeals, DANHOF, C.J., and MURPHY and T. M. BURNS, JJ., affirmed (Docket No. 115339). The defendant appeals.

In a unanimous opinion by Justice LEVIN, the Supreme Court *held:*

The Workers' Compensation Appellate Commission, on appel-

late review, did not exceed its authority in reversing the decisions of the magistrates and in awarding benefits.

1. 1985 PA 103 eliminated review de novo by the Workers' Compensation Appeal Board in workers' compensation cases, beginning October 1, 1986. Findings of fact by a workers' compensation magistrate are now considered conclusive, on administrative appellate review by the Workers' Compensation Appellate Commission, if supported by competent, material, and substantial evidence on the whole record. The findings of fact made by the WCAC, not the findings of the magistrate, are to be conclusive on judicial appellate review, in the absence of fraud, if there is any evidence to support them. The standard for judicial review was not changed by 1985 PA 103.

2. The substantial evidence standard, like the standard for judicial appellate review, is rooted in Const 1963, art 6, § 28, which provides that administrative agency decisions subject to judicial review following a hearing are to be minimally reviewed to determine whether they are supported by competent, material, and substantial evidence on the whole record. Review of the evidence by the WCAC must include both a qualitative and quantitative analysis to ensure a full, thorough, and fair review. The WCAC may adopt, in whole or in part, the order and opinion of the magistrate as its order and opinion.

3. The question on judicial appellate review is whether the WCAC acted in a manner consistent with the concept of administrative appellate review that is less than review de novo in finding that magistrate's decision was supported by competent, material, and substantial evidence on the whole record. To judge whether it acted properly, consideration is given to the issues of credibility regarding live witnesses determined by the magistrate, the evidence considered and ignored, the care taken, and the reasoning and analysis of the magistrate and the WCAC, with due deference given to the administrative expertise of both the WCAC and the magistrate. Recognition that the WCAC brings the administrative expertise of more than one person, may be appropriate depending on the factual or legal issue. A carefully constructed opinion by the WCAC enables appellate courts to determine whether it duly recognized and observed the limitations on its reviewing function contemplated by the substantial evidence standard. A reviewing court should ordinarily defer to the collective judgment of the WCAC unless it is manifest that it exceeded its reviewing power.

4. In these cases, the WCAC panels did not exceed the legislatively prescribed reviewing function. Both panels, after acknowledging that their review of the magistrates' decisions were limited by the "substantial evidence on the whole record"

standard, gave adequate reasons, grounded in the records, for reversing the fact finding of the magistrates.

*Holden,* reversed.

*Weiss,* affirmed.

185 Mich App 305; 460 NW2d 316 (1990) reversed.

185 Mich App 687; 462 NW2d 821 (1990) affirmed.

*Thomas J. Bertino (Daryl Royal,* of counsel) for the plaintiff in *Holden.*

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *A. Donald Kadushin* and *Granner S. Ries*), for the plaintiff in *Weiss.*

*John M. Thomas* for the defendant in *Holden.*

*Murray R. Feldman (Conklin, Benham, Ducey, Listman & Chuhran, P.C.,* by *Martin L. Critchell,* of counsel) for the defendant in *Weiss.*

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Caleb B. Martin, Jr.,* and *Ray W. Cardew, Jr.,* Assistant Attorneys General, for the Attorney General.

*Mark Granzotto, Monica Farris Linkner,* and *Charles P. Burbach* for the Michigan Trial Lawyers Association.

LEVIN, J. The question presented concerns the scope of administrative appellate review by the Workers' Compensation Appellate Commission of a decision of a magistrate, and the scope of judicial appellate review on leave granted by the Court of Appeals or this Court.

We conclude that the WCAC did not, on administrative appellate review, exceed its authority in reversing the decisions of the magistrates and in awarding benefits, and that the Court of Appeals

panel in *Holden*[1] erred in reversing, and the panel in *Weiss*[2] did not err in affirming, the WCAC.

I

Before the reforms enacted in 1985,[3] hearings in workers' compensation cases were conducted by a referee, also referred to as an administrative law judge, with de novo review by the Workers' Compensation Appeal Board. Judicial review was obtainable on application, not as of right, in the Court of Appeals and this Court.

In an effort to address the large number of backlogged appeals, the Department of Labor considered proposals for changes in the administrative appellate review process. In 1980, the Lesinski Report, summarizing the results of the department's Workers' Compensation Adjudication Project, proposed that decisions of a magistrate be made conclusive "unless fraudulently obtain[ed] or contrary to the great weight of the evidence."[4] No procedural reform legislation was, however, enacted.

In 1984, Theodore J. St. Antoine, the Governor's Special Counsel on Workers' Compensation, recommended significant changes in the decision-making process. Like the Lesinski Report, St. Antoine recommended that de novo review of the hearing officer's decision be eliminated. He proposed that the question, on administrative appellate review, should be whether the decision of the hearing officer is supported by "substantial . . . evidence on the whole record." He said that this standard

---

[1] 185 Mich App 305; 460 NW2d 316 (1990).

[2] 185 Mich App 687; 462 NW2d 821 (1990).

[3] 1985 PA 103.

[4] Workers' Compensation Adjudication Review Project, Final Report to the Director [of the Michigan Department of Labor], October 1, 1980, appendix B-17 (emphasis added), and see *id.,* pp 155-158.

was "deliberately designed to allow the Appeal Board a bit more latitude" than it would have had under the "great weight of the evidence" standard proposed in the Lesinski Report. St. Antoine said this would enable the reviewing panel to "remedy any serious misstep by [a hearing officer] in assessing the evidence and making factual findings."[5]

St. Antoine's proposals were in general adopted by the Legislature when it enacted 1985 PA 103.[6] Magistrates replaced referees, and the WCAC replaced the WCAB.[7]

### A

Under Act 103, beginning October 1, 1986, de novo review was eliminated. Henceforth, findings of fact by a workers' compensation magistrate were to be considered conclusive, on administrative appellate review by the WCAC, if supported by "competent, material, and substantial evidence on the whole record." MCL 418.861a(3); MSA 17.237(861a)(3).

This substantial evidence standard provides for administrative appellate review more deferential to the hearing officer's decision than de novo review, but for more searching review by the WCAC

[5] St. Antoine, *Workers' Compensation in Michigan: Cost, benefits, and fairness,* p 71.

[6] Section 206 (MCL 418.206; MSA 17.237[206]) provided for the abolition of the office of hearing referee. Section 209 (MCL 418.209; MSA 17.237[209]) provided for a gubernatorially appointed six-member Qualifications Advisory Committee to, among other things, recommend for appointment to the Governor the members of the Board of Magistrates and the Workers' Compensation Appellate Commission. Section 213 (MCL 418.213; MSA 17.237[213]) established a gubernatorially appointed thirty-member Board of Magistrates. Section 274 (MCL 418.274; MSA 17.237[274]) established a gubernatorially appointed seven-member Workers' Compensation Appellate Commission.

[7] See *Civil Service Comm v Dep't of Labor,* 424 Mich 571, 577-587; 384 NW2d 728 (1986), for a discussion of prior law, and of the reforms enacted by Act 103.

than judicial review under the "any evidence standard." The constitution provides for such limited judicial review:

> Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law. [Const 1963, art 6, § 28.]

Act 103 did not change the standard for judicial review of final decisions in workers' compensation proceedings.[8] The Legislature had provided, under former law, that it was the findings of fact made by the *WCAB* that were to be conclusive on judicial appellate review, in the absence of fraud.[9] Act 103 provides that the findings of fact made by the *WCAC*, not the findings of the magistrate, are to be conclusive, on judicial appellate review, in the absence of fraud.[10]

---

[8] Judicial review is limited review. In *Koopmans v Parsons,* 250 Mich 464, 467-469; 231 NW 87 (1930), this Court said that "[i]f there is evidence in support of [the board's] conclusion, the award will not be disturbed. . . . With the testimony on the other side of the issue we are not concerned, because we do not weigh the evidence." Similarly, in *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135-136; 274 NW2d 411 (1979), this Court said that it would interfere with findings of the WCAB only when convinced that there was no evidence to support them.

In *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978), construing MCL 418.861; MSA 17.237(861), this Court said that review was to determine whether questions of law were correctly decided and whether there was any fraud associated with, or "any competent evidence" to support, the findings of fact made by the WCAB.

[9] The findings of fact made by the *board* acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board . . . . [MCL 418.861; MSA 17.237(861). Emphasis added.]

[10] The findings of fact made by the *commission* acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the

The Legislature, by employing the language of the constitution in stating that the fact finding of the WCAC is final subject to limited judicial review, made clear that judicial review by the Court of Appeals or this Court of a WCAC decision is to be of the findings of fact made by the WCAC and not the findings of fact made by the magistrate. And the findings of fact made by the WCAC are conclusive if there is any competent evidence to support them. As under prior law, judicial review is obtainable on application, not as of right, to the Court of Appeals and this Court.[11]

B

The substantial evidence standard, like the standard for judicial appellate review, is rooted in Const 1963, art 6, § 28, which provides that administrative agency decisions subject to judicial review following a hearing shall be minimally reviewed to determine whether the decision is "supported by *competent, material and substantial evidence on the whole record.*" (Emphasis added.)[12]

As originally introduced in the Senate, the 1985 legislation would not have defined what constitutes

commission . . . . [MCL 418.861a(14); MSA 17.237(861a)(14). Emphasis added.]

The legislative history of § 861a(14) indicates that the Legislature carefully considered whether it would retain language in § 861 providing that the findings of fact made by the board/commission are conclusive in the absence of fraud. See SB 7, Substitute for SB 7 (s-4), House Substitute for SB 7 (H-4) and House Substitute for SB 7 (H-5).

[11] MCL 418.861a(14); MSA 17.237(861a)(14).

[12] In *Civil Service Comm v Dep't of Labor,* n 7 *supra,* p 622, this Court said that "[a] magistrate's decision is reviewable by the newly constituted appellate commission under precisely the same standard that applies to judicial review of decisions of administrative tribunals generally."

"substantial evidence on the whole record."[13] The House Substitute, which became Act 103, retained the "substantial evidence on the whole record" standard,[14] but added definitions of "substantial evidence" and "whole record"[15] taken from *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974), where this Court considered the meaning of "substantial evidence" in the context of judicial review of findings of fact by the Michigan Employment Relations Commission pursuant to the labor mediation act.[16] The House

---

[13] If a claim for review of a Hearing Referee's order is filed, the board shall promptly review the order, together with the records of the hearing. . . . [*F*]*indings of fact made by the hearing referee shall be conclusive if supported by competent, material, and substantial evidence on the whole record.* . . . The Board may adopt, in its entirety, the opinion of the hearing referee provided for under section 852 as the opinion of the board. [SB 7, § 859, as proposed on January 10, 1985. Emphasis added.]

The first full Senate revision made no substantive change: "Findings of fact made by a [hearing referee] in his or her order and opinion under section 851 shall be considered conclusive by an appeal panel of the commission if supported by competent, material, and substantial evidence on the whole record." Substitute for SB 7 (S-4), § 861A(2).

[14] House Substitute (H-5) for SB 7, which would have provided for a substantial evidence standard that was virtually identical to the language in the APA, was rejected by the House, and House Substitute (H-4) was sent back to the Senate. Compare MCL 24.306; MSA 3.560(206) with House Substitute (H-5).

[15] House Substitute for SB 7 (H-4), § 861A(2).

[16] The statute provides that final orders of the MERC are reviewable by the Court of Appeals, and that "findings of the commission with respect to questions of fact if supported by competent, material, and substantial evidence on the record considered as a whole shall be conclusive." MCL 423.23(2)(e); MSA 17.454(25)(2)(e).

The Court said:

What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record— not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a

Substitute also added language, again taken from *Detroit Symphony,* providing that the WCAC's review of a magistrate's decision should include both a "qualitative and a quantitative" analysis of the evidence to ensure a full, thorough, and fair review.[17]

As enacted, the "substantial evidence on the whole record" standard largely parallels the description of substantial evidence in *MERC v Detroit Symphony Orchestra.* The statute provides that findings of fact made by a magistrate shall be considered "conclusive by the commission if supported by competent, material, and substantive evidence on the whole record":

> degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. [*MERC v Detroit Symphony Orchestra, supra,* p 124.]

The Court adopted a portion of the opinion of the United States Supreme Court in *Universal Camera Corp v NLRB,* 340 US 474, 496; 71 S Ct 456; 95 L Ed 456 (1951), where the Court construed the federal "substantial evidence" standard in the National Labor Relations Act. The Court said with respect to findings by a referee, or magistrate:

> We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner *who has observed the witnesses* and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. [Emphasis added.]

[17] House Substitute for SB 7 (H-4), § 861A(11). According to Welch, Worker's Compensation in Michigan: Law & Practice, § 21.13, § 861A(11) was added by House Substitute for SB 7 (H-4), because there was much concern about limiting the scope of the review of the new appellate commission.

The House Substitute also provided the WCAC with the authority to adopt the opinion of the magistrate, in whole or in part, not only the opinion in its entirety, as the opinion of the WCAC. House Substitute for SB 7 (H-4), § 861A(8).

—" '[S]ubstantial evidence' means such evidence, considering the *whole record,* as a *reasonable mind* will accept as adequate to justify the conclusion." (Emphasis added.)

—" '[W]hole record' means the entire record of the hearing including all of the evidence in favor *and all the evidence against a certain determination.*" (Emphasis added.)

—Wcac review of the evidence "shall include both a *qualitative and quantitative* analysis of that evidence and ensure a full, thorough, and fair review thereof." (Emphasis added.)

—The wcac "may adopt, in whole or *in part,* the order and opinion of the worker's compensation magistrate as the order and opinion of the commission."[18] (Emphasis added.)

---

[18] The statute provides:

(1) Any matter for which a claim for review under section 859a has been filed shall be heard and decided by the appellate commission.

(2) Until October 1, 1986 findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and a preponderance of the evidence on the whole record.

(3) Beginning October 1, 1986 findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record. As used in this subsection, "substantial evidence" means such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion.

(4) As used in subsections (2) and (3) "whole record" means the entire record of the hearing including all of the evidence in favor and all the evidence against a certain determination.

\* \* \*

(10) The commission or a panel of the commission, may adopt, in whole or in part, the order and opinion of the

In apparent recognition of the difference between judicial appellate review of an administrative agency's decision, and administrative appellate review by the WCAC of a magistrate's decision, the Legislature did not enact, as part of the substantial evidence standard for workers' compensation administrative appellate review purposes, the MERC language that review by the WCAC is to be "undertaken with considerable sensitivity" to provide "due deference to administrative expertise" and to avoid displacing a "choice between two reasonably differing views."[19] *MERC v Detroit Symphony Orchestra, supra,* p 124.

C

The question on judicial appellate review is, in each case, whether the WCAC acted in a manner consistent with the concept of administrative appellate review that is less than de novo review in finding that the magistrate's decision was or was

---

worker's compensation magistrate as the order and opinion of the commission.

(11) The commission or a panel of the commission shall review only those specific findings of fact or conclusions of law that the parties have requested be reviewed.

(12) The commission or a panel of the commission may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined that the record is insufficient for purposes of review.

(13) A review of the evidence pursuant to this section shall include both a qualitative and quantitative analysis of that evidence and ensure a full, thorough, and fair review thereof.

(14) The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission . . . . [MCL 418.861a; MSA 17.237(861a).]

[19] When it does so, the WCAC should carefully explain why it chose to adopt one expert's opinion in preference to another.

not supported by competent, material, and substantial evidence on the whole record. In judging, on judicial appellate review, whether the WCAC acted properly, this Court and the Court of Appeals begin with the words of the Legislature. This Court and the Court of Appeals consider whether there are issues of credibility of live witnesses to be determined by the magistrate, the evidence considered and ignored by the magistrate and the WCAC, the care taken by the magistrate and the WCAC, and the reasoning and analysis of the magistrate and the WCAC.

We agree with the Court of Appeals in *Weiss* that the stringent constitutional and statutory limitations on judicial appellate review suggest that some latitude must be given the WCAC, should it find that the magistrate's findings of fact are not supported by "competent, material, and substantial evidence on the whole record," if there is to be any effective appellate review, administrative or judicial, at all. And that if the appellate courts were not to allow such latitude to the WCAC, they would find that they were increasingly called upon to perform the appellate reviewing function so that there would be effective appellate review at some level.

Due deference should be given to the administrative expertise of the WCAC, as well as to the administrative expertise of the magistrate. Recognition that a WCAC panel brings to the table the administrative expertise of more than one person may, depending on the factual or legal issue, be appropriate.

A carefully constructed opinion by the WCAC enables the Court of Appeals and this Court to determine whether the WCAC duly recognized and observed the limitations on its reviewing function contemplated by the substantial evidence stan-

dard. If the opinion is carefully constructed, a reviewing court should ordinarily defer to the collective judgment of the WCAC unless it is manifest that it exceeded its reviewing power.[20]

We do not now offer a judicial standard in exegesis of the legislatively stated standard. If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not "misapprehend or grossly misapply" the substantial evidence standard,[21] and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member WCAC of decisions of thirty magistrates, and bestowed on the WCAC final fact-finding responsibility subject to constitutionally limited judicial review.

## II

In *Holden,* the magistrate denied death benefits to the widow of a Ford employee who suffered a cardiac episode at work, and died shortly thereafter. The WCAC reversed the magistrate, and was

[20] This Court explained the importance of a carefully reasoned opinion at the administrative appellate review level when it said:

[W]e cannot review a decision of the WCAB as a question of law unless its findings of fact are sufficiently detailed so that we can separate the facts it found from the law it applied, and that conclusory findings are inadequate because we need to know the path it has taken through the conflicting evidence, the testimony it has adopted, the standards followed and the reasoning used to reach its conclusion. [*Kostamo v Marquette Iron Co,* n 8 *supra,* p 136. See also *Zaremba v Chrysler Corp,* 377 Mich 226, 228; 139 NW2d 745 (1966).]

[21] *Universal Camera,* n 16 *supra,* p 491.

in turn reversed by the Court of Appeals which reinstated the magistrate's decision.

### A

Carl Holden managed food service operations in three dining rooms and four cafeterias for Ford Motor Company. He oversaw the cafeteria and dining rooms in Ford's Renaissance Center facility and managed dining facilities in four other metropolitan Detroit locations. In addition to overseeing daily lunch preparation and service for over 1,000 Ford executives and employees, Holden was responsible for executive dinners and company-sponsored parties. Holden's supervisor testified that Holden was very conscientious.

On July 11, 1986, Holden arrived around 8:30 A.M. at his office in the Renaissance Center. First cook Daniel Micallef testified that he was in Holden's office when he arrived. Holden took off his coat and "made like a sigh." Holden did not look well and "[h]is color was like a gray, grayish color." Holden said that "he had just took [sic] the stairs and he wasn't feeling well. His hands were clammy and his chest hurt." Micallef left Holden sitting in his chair. He returned shortly thereafter to speak to Holden. Holden was lying on his desk, gasping for air. Emergency medical personnel were called; Holden was taken to the hospital, where he died within an hour.[22]

Holden was assigned a parking space in Renaissance Center "M" lot. To reach the elevators, Holden had to climb three flights of approximately ten stairs each. While Holden could have parked in another lot, this too would have required him to climb three flights of stairs to reach an elevator.

Dr. Werner Spitz, then the Wayne County Medi-

---

[22] Holden was fifty-six years old at the time of his death.

cal Examiner, board certified in pathology and forensic pathology, and plaintiff's expert witness, testified that Holden suffered a myocardial infarction caused by job-related stress and precipitated by stair climbing.[23]

[23] Spitz performed an autopsy. In his autopsy report Spitz said that Holden died of arteriosclerotic and hypertensive heart disease, that his heart was enlarged, and his arteries were reduced to one quarter of their original diameter. The report also stated that Holden was "somewhat overweight," weighing 186 pounds and measuring five feet, nine inches tall.

Spitz made notes during the autopsy:

> Organs congested and edema of the lungs and brain. Heart enlarged 400 grams. No scars, no recent infarct. Hypertrophic left ventricle wall. Bowels okay. Arteriosclerosis of arteries, 3+ with planks [sic] and scars and ulcerations. Arteriosclerosis of coronary arteries. Up to 75 percent reduction of passage. Chronic gastritis.

Spitz retained tissues of the heart and other organs for later examination. He testified that, after examining the heart tissue, he concluded that "Mr. Holden suffered of [sic] severe arteriosclerotic and hypertensive heart disease with evidence of old and recent myocardial damage."

Spitz explained that the cause of death as listed in the autopsy report, arteriosclerotic and hypertensive heart disease, was an

> all encompassing term and not a specifically—specific term indicating the mechanism. And, this is because of the reasons that arteriosclerotic and hypertension, heart disease is recognizable on the day of the autopsy. In fact, also a myocardial infarction in progress is a microscopic examination.

Spitz testified that he is required by law to file a death certificate promptly after performing an autopsy. Only later did he perform a microscopic examination of the heart and organ tissues retained for that purpose.

Spitz testified that while Holden's employment did not cause his underlying condition, arteriosclerosis, he believed there was a "good possibility" that Holden's death was hastened as a result of his employment. Spitz testified, when asked if there were any specific incidents or events which caused or significantly contributed to Holden's heart damage, that

> The general worry that goes on with an increased work load and the completion of the same and specifically the climbing up of the stairs on the last day of his life when he came to the work area complaining of chest pain after he had just run up

Dr. Donald L. Newman, board certified in family practice and Holden's personal physician, testified on the basis of his review of records, including Spitz' autopsy report, the death certificate, a job description and witness statements. Newman opined that Holden suffered a myocardial infarction precipitated by stair climbing.

Dr. Robert A. Gerisch, board certified in internal medicine and specializing in cardiology, testified for Ford. He said that he had examined the tissue slides from the autopsy, hospital records, Spitz' deposition testimony and Holden's job description. He opined, on the basis of his examination of the tissue slides and the record of an EKG taken at the hospital shortly before Holden died, that Holden did not suffer a myocardial infarction.

Gerisch said that the tissue slides did not evidence scarring that would indicate either a recent or an old myocardial infarction. He also testified, however, that the characteristic scarring that occurs after a myocardial infarction is not reflected in the heart muscle tissue for six to eight hours after the infarction occurs. He added that the EKG indicated "an acute infarction type of pattern or ischemia[24] which, if it persists, could develop into an infarction."

the flight of stairs all point towards my previously stated opinion.

He explained that emotional and physical stress make the heart beat faster, that because the heart is beating faster it needs more fuel, oxygen, which it obtains by pumping more blood. When, however, the blood supply is inadequate because of underlying disease, then the heart may sustain a myocardial infarction.

He testified further that the

sustained stress such as Mr. Holden's during a prolonged period prior to his demise could be [sic] contributed to his demise, and that the last day's effort in coming up the stairs, that may have been the straw that broke the camel's back.

[24] Ischemia means "lack of blood" which causes a lack of oxygen.

Gerisch opined that, given the condition of Holden's heart, there was a one hundred percent probability that he would eventually suffer a myocardial infarction, but that he actually died of ischemia that brought on arrhythmia.[25] He said that the heart was depleted of all oxygen by the ischemia, caused by narrowed arteries, which brought about the arrhythmia which, corrected only temporarily at the hospital, resulted in Holden's death.[26]

B

The magistrate found that the claimant failed to establish the requisite nexus between the claimed injury to the heart and work.

The magistrate found that there was almost no testimony concerning specific episodes of job stress that might be related to Holden's death. He rejected testimony that Holden was a worrier as "grossly speculative and without foundation." He reviewed Micallef's testimony and concluded that Holden "had yet to engage in any physical activities following his arrival on the premises." He found that the medical testimony that climbing stairs was related to Holden's "cardiac episode" was speculative.[27]

---

[25] When the heart is arrhythmic, it is without rhythm and is not pumping properly and thus is not causing blood to flow to the tissues.

[26] Gerisch was not asked, nor did he give an opinion, whether climbing three flights of stairs on the day of Holden's collapse could have contributed to the ischemia or arrhythmia and therefore to his death.

[27] The record evidence concerning when such stairs were climbed, their number, and the interval between this activity and decedent's collapse is sketchy indeed. Without such information I found that the medical testimony positing such as a cause of death to be grossly speculative and such is rejected.

The magistrate said that because of the paucity of evidence showing that "any 'heart damage' or myocardial infarction" related to a specific incident in the work place, it would be superfluous for him to go into any of the medical testimony.[28]

C

The WCAC first set out the legal framework for its review, acknowledging that its review of a magistrate's findings was a limited review for substantial evidence. The WCAC then observed that under *Miklik v Michigan Special Machine Co*, 415 Mich 364, 367, 370; 329 NW2d 713 (1982),[29] a plaintiff must establish by a preponderance of the evidence that there is heart damage, and a relationship between the damage and specific incidents or events at work.

The WCAC reviewed the findings of the magis-

---

[28] The magistrate added, however:

In any event, the Magistrate rejects Dr. Spitz' opinion as unsupported by proper hypothetical question and Dr. Spitz' opinion as expressed at page 19 of his deposition:

"It is my opinion that the stress at Mr. Holden's employment as well as consisting of both emotional and physical types of stress connected with the job aggravated and accelerated his heart disease and brought on the demise."

is utterly and completely without evidentiary foundation.

Further, Dr. Spitz' testimony is rejected relative to his conclusion concerning the occurrence of a myocardial infarction since he fails to indicate the basis for such conclusion anywhere in his testimony.

The magistrate concluded that the claimant failed to establish by the preponderance of the evidence that Holden received an injury within the meaning of the act since the proofs presented failed to establish that Holden was engaged in a stressful activity on July 11, 1986, or shortly prior thereto. The magistrate concluded that there was *no* evidence that Holden was engaged in any stressful activity on the last day of work.

[29] Construing MCL 418.401(2)(b); MSA 17.237(401)(2)(b).

trate, and concluded that the magistrate had failed to find whether Holden sustained heart damage. The WCAC reviewed the magistrate's finding that Spitz' opinion that Holden suffered a myocardial infarction was unsupported. The WCAC said that it was "compel[led] . . . to disagree" with the magistrate's finding that Spitz had failed to indicate a basis for his opinion; the WCAC said that its review of the record indicated that

> Dr. Spitz testified that his microscopic examination of the heart tissue, conducted several weeks after the original autopsy report, revealed extensive old *and recent* myocardial infarction. The magistrate's finding overlooks this testimony and thus is erroneous. [Emphasis added.]

The WCAC said that because the magistrate made no further findings regarding heart damage, it was incumbent on the WCAC to do so.[30] The WCAC noted that Spitz and Newman testified that Holden suffered a myocardial infarction caused by job-related stress and precipitated by stair climbing. Conversely, Gerisch testified for Ford that Holden did not suffer heart damage, but died as a result of a disturbance in heart rhythm.

The WCAC said that it found Spitz' testimony was more persuasive because he is a trained pathologist who specializes in the microscopic examination of tissue, as was done in the instant case, while Gerisch is an internist.

The WCAC added, alternatively, that a myocardial infarction was not the only compensable heart damage, particularly in cases where *"all the experts agree that the decedent suffered a heart failure which resulted in death."* (Emphasis added.) The WCAC ruled that there is heart damage

---

[30] MCL 418.861a(14); MSA 17.237(861a)(14).

where the heart fails to function, resulting in sudden death, because of arrhythmia.[31]

The WCAC also found the requisite relationship between the cardiac damage and Holden's work. The WCAC said that the magistrate focused on the stress inherent in employment, but ignored evidence that climbing stairs precipitated the heart failure.[32] The WCAC reviewed the evidence of stair climbing, noting that Holden linked it to his distress, and that Micallef testified that Holden would have climbed the stairs immediately before the cardiac episode.

The WCAC ruled that the claimant was not required, under the 1980 amendment of the statute, to establish that the claimed injury was "contributed to or accelerated the condition in a significant manner"[33] because the 1980 amendment, applicable where the worker claims only that a heart or cardiovascular condition was contributed to or aggravated or accelerated, is not applicable where the claim is based on an asserted injury.

Here, observed the WCAC, the claimant did not contend that the employment contributed to or aggravated or accelerated Holden's arteriosclerosis. The WCAC concluded that stress related to the work combined with the arteriosclerosis to cause an infarction, or, alternatively, arrhythmia resulting in the failure of the heart to function. In sum, the WCAC ruled that failure of the heart to func-

[31] The WCAC cited this Court's decision in *Kostamo v Marquette Iron Mining Co,* n 8 *supra,* p 126, n 9; and *Volter v Ford Motor Co,* 1985 WCABO 432, "where it was held that an electrical conduction defect, requiring the implantation of a pacemaker and causing disabling pain, constituted heart damage."

[32] The WCAC found that the magistrate ignored Micallef's testimony concerning the stair climbing, and the testimony of Spitz and Newman that the stair climbing precipitated the arrhythmia and resultant heart failure and death.

[33] MCL 418.301(2); MSA 17.237(301)(2).

tion, either as a result of an arrhythmia or as a result of an infarction, is a compensable injury.

This Court has not acted on Ford's cross appeal claiming that the 1980 amendment required the claimant in this case to show and the WCAC to find that Holden's employment contributed to or aggravated or accelerated Holden's underlying condition —arteriosclerosis—in a significant manner.[34]

D

We conclude that the WCAC did not exceed the legislatively prescribed reviewing function.

The WCAC acknowledged that its review of the magistrate's decision was limited by the "substantial evidence on the whole record" standard. Having determined that the magistrate's findings and conclusions were not supported by substantial evidence on the whole record, the WCAC proceeded to assess the evidence on the whole record in light of *Miklik* and to make its own findings.

The WCAC explained why it found Spitz' testimony more persuasive than Gerisch's. It further explained that Gerisch's testimony concerning a fatal arrhythmia also indicated the requisite heart injury.[35]

[34] Sections 401 and 301 of the WDCA were amended in 1980, effective January 1, 1982. 1980 PA 357. Both now provide that "[m]ental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable *if contributed to or aggravated or accelerated by the employment in a significant manner.*" MCL 418.301(2), 418.401(2)(b); MSA 17.237(301)(2), 17.237(401)(2)(b), as amended.

[35] Ford and Jewish Home argue that where a magistrate's findings of fact are supported by the opinion of a qualified expert who has a rational basis for the view expressed, the magistrate's findings are necessarily supported by substantial evidence even though the experts disagree and the WCAC had, as here, a rational basis for reconciling their conflicting opinions or for assessing them differently than the magistrate.

Ford's and Jewish Home's reliance on *Great Lakes Steel v Michi-*

The WCAC similarly reviewed the magistrate's finding that the claimant failed to establish a relationship between the cardiac episode and Holden's employment. It explained why it found the magistrate's finding was not supported, stating that the magistrate focused only on evidence concerning generalized stress and ignored evidence of a specific incident.[36]

Finally, the WCAC noted that both Spitz and Newman testified concerning the connection between stair climbing and the arrhythmia, and resultant heart failure and death, which testimony the magistrate also ignored.

We conclude that the WCAC gave adequate reasons, grounded in the record, for reversing the fact finding of the magistrate.

E

The Court of Appeals panel in *Holden,* in reversing the WCAC, began its review concerning the application of the substantial evidence standard by undertaking an independent review of the record and the magistrate's opinion.[37] The Court then reviewed the WCAC's opinion. Finally, the Court explained why it found that the magistrate's find-

*gan Public Service Comm,* 130 Mich App 470; 344 NW2d 321 (1983), is misplaced. *Great Lakes* states that the expert testimony there being considered could not be reviewed under the substantial evidence test. Further, the language of the statute mandates that the WCAC review the entire record, including expert testimony.

[36] The WCAC noted that the magistrate, who had questioned Micallef on this issue, made no reference to Micallef's testimony concerning stair climbing. The magistrate apparently did not reject Micallef's testimony because he found it incredible, but because he found it "sketchy indeed."

[37] The Court of Appeals noted, but did not question, Ford's argument that the WCAC failed to apply the proper legal standard for heart cases.

ings were supported by "substantial evidence and should not have been overturned" by the WCAC.[38]

The review undertaken by the Court of Appeals in *Holden* was not the limited judicial appellate review envisioned by the Legislature. The statute clearly provides that the Court of Appeals is to review the final decision of the WCAC, not the decision of the magistrate.

III

In *Weiss,* a magistrate entered a closed award of benefits for personal injury. The WCAC affirmed the magistrate's finding that Weiss had suffered an injury, but modified the order to provide an open award. The Court of Appeals affirmed.[39]

A

Vera Weiss was employed as a registered nurse in a facility operated by the Jewish Home for the Aged.[40] On November 18, 1985, she injured her lower back while moving a heavy paraplegic patient from a bed to a wheelchair. Weiss was absent from work for five days. She returned to work, but found that her back pain progressively worsened. Her supervisor sent her to an industrial clinic.[41]

---

[38] Ford argued at oral argument that the WCAC's application of the substantial-evidence test is a question of law subject to de novo review on appeal. Therefore, because on appeal the Court of Appeals again reviews the administrative agency findings for substantial evidence, the scope of review by the Court of Appeals is *identical* to that of the appellate commission.

Such a review, under the guise of de novo review of questions of law, transforms the Court of Appeals review into another "substantial evidence" review of the facts. This was clearly not the intent of the Legislature.

[39] See n 2.

[40] This facility served elderly patients who require skilled medical care and physical assistance.

[41] Weiss left work until February 3, 1986, when she returned to

Weiss testified that before the back injury she was continuously employed as a registered nurse in a facility where the "standard nursing duties" involved the daily dressing, transferring and feeding of patients. Weiss said that after the back injury she was unable to perform these tasks because of pain caused by lifting, twisting, and bending. Weiss is no longer employed.[42]

Weiss was initially treated by an orthopedist, Dr. Norman Pollak, at the industrial clinic recommended by the Jewish Home. He diagnosed Weiss on December 17, 1985, as suffering from sciatica affecting the L5 nerve root. Pollak continued to treat Weiss until April 15, 1986. Although he testified that Weiss was able to return to work on April 15, 1986, he recommended that she receive cortisone injections into the layer of tissue surrounding her spinal cord. Weiss refused this procedure because she feared complications.

From February, 1986, until February, 1987, Weiss was treated by Dr. Mark Rottenberg, board certified in physical medicine and rehabilitation. His initial diagnosis, based on x-rays, was that Weiss suffered from a lumbosacral strain involving the sacroiliac joint with possible lumbosacral disc disease and radiculopathy (pinched nerve). He also found that Weiss had problems with her right knee.

In May, 1986, Rottenberg ordered a CAT scan; then, in September, 1986, an electromyography and a thermogram, and the previous set of x-rays

part-time "light" work for a short period. Weiss found however, that she was unable to do the lighter work, which involved bending and kneeling, because of severe back pain.

[42] She testified that she performs electrolysis treatments in a beauty salon, and that in lieu of payment she exchanges her services, of about forty-five minutes two or three days a week, for massage therapy and whirlpool treatments.

were repeated. Finally, he ordered a sedimentation-rate test.

Rottenberg concluded, on the basis of the results of the tests and Weiss' continuing complaints of lower back pain, that she suffered from a lumbosacral disc disease with a bulging disc and canal narrowing at L4-5 and right lumbosacral radiculopathy. He further concluded that because the rest of Weiss' tests, including the sedimentation rate for arthritis, were negative, that the disc narrowing was attributable to trauma rather than arthritic disease. Finally, he concluded that, because Weiss' February, 1986, x-rays of the lower back and right knee had been negative, while those taken in September, 1986, were abnormal, her condition was deteriorating. He concluded that Weiss' knee injury resulted from the tearing of a medial meniscus muscle due to her compensating for the right leg radiculopathy.

Clinical tests that Rottenberg performed were also positive. He testified that he found a decreased sensation to pin prick testing over Weiss' right S1 region, that the straight leg raising tests were positive after seventy degrees for the left and sixty for the right, and that the Fabere-Patrick test was positive for S1 discomfort.

A Hoover test was negative. Positive Hoover test results would have suggested that Weiss had learned to report a back problem, rather than true underlying pathology.

Rottenberg was of the opinion that Weiss was disabled as a result of a work-related injury.

Dr. William Miller, an orthopedist, examined Weiss for the Jewish Home on one occasion, September 5, 1986.[43] Miller took x-rays, ordered an EMG, a sedimentation rate, and a rheumatoid ar-

---

[43] Dr. Miller testified that his practice is focused almost entirely on examining patients for employers.

thritis factor. He testified that the x-rays showed a narrowing of the disc space between L5-S1. He did not order a CAT scan.

In addition to these tests, Miller also performed clinical tests. He performed a straight leg raising test, first with Weiss in a supine position, and then in a standing position, and found limitations in her range of motion in both positions—at seventy degrees bilaterally for the supine test. Weiss demonstrated excellent straight leg raising on her left leg, when she mounted the examination table, leading off with her left leg. He noted that she did not mount the table from the right.

Miller found that Weiss' demeanor during the office visit invalidated the results of his physical examination. He said that while he was taking her history, Weiss fidgeted and moved around in her chair, which led him to believe that her responses were less than candid. He also said that he found that during the examination her expressions of pain were "exaggerated."

Miller testified that he also obtained positive results when he performed a Fabere-Patrick test, and that the vertical compression test was positive. He observed that when he asked Weiss to walk on her toes, she had a decided limp on her right side.

Miller concluded, on the basis of these findings, that while Weiss may have had a lower back sprain with some nerve root irritation in the past, she was able to return to work when he examined her.

B

The magistrate found that Weiss had been temporarily disabled, and entered a closed award of benefits ending on September 5, 1986.

The magistrate, under the heading "findings," summarized portions of the testimony of the three physicians. The magistrate then stated, without further discussion, under the heading "conclusion," that Weiss was injured on November 18, 1985, but "based on the medical opinions as well as the demeanor of the witnesses at the trial level, it appears that the plaintiff's problems with her low back resolved as of the date of Dr. Miller's examination on September 5, 1986."[44]

C

Weiss and Jewish Home both filed appeals with the WCAC. The WCAC, after comparing the testimony of the three physicians, determined that Weiss had been and continued to be disabled, and modified the award to provide an open award of benefits.

The WCAC acknowledged the limited scope of administrative appellate review, and explained why it concluded that the evidence supported the magistrate's finding that Weiss established her

[44] The magistrate concluded:

A review of the whole record as well as the medical testimony indicates that the plaintiff was injured on November 18, 1985 and received an injury to her low back which possibly involved a nerve root irritation. However, based on the medical opinions as well as the demeanor of the witnesses at the trial level, it appears that the plaintiff's problems with her low back resolved as of the date of Dr. Miller's examination on September 5, 1986. The record also indicates that the plaintiff apparently has had some problems with her right knee, but it appears from the record that said problems do not arise out of her employment with Jewish Home for the Aged. Therefore, it is found that the plaintiff has established by preponderance of evidence that she was disabled from November 19, 1985 to November 24, 1985, and November 26, 1985 to September 5, 1986, as a result of an injury to her low back on November 18, 1985, arising out of and during the course of her employment with the Jewish Home for the Aged.

entitlement to benefits beyond April 21, 1986. It noted that only Pollak, who saw Weiss when she was sent to his industrial clinic by Jewish Home, supported Jewish Home's claim that Weiss had failed to establish entitlement beyond April 21, 1986. Pollak, who treated Weiss between December 17, 1985 and April 18, 1986, found her disabled throughout that period. Further, when he released Weiss for unrestricted work, Pollak continued to recommend that she undergo epidural steroid injections. The WCAC concluded that Pollak's recommendation that Weiss receive epidural injections was inconsistent with his decision to return her to unrestricted work. It also concluded that Pollak's evaluation of Weiss was biased by her reasonable refusal to accept the potentially harmful injections.

The WCAC found that the magistrate, who determined that Weiss was entitled to benefits beyond April 21, 1986, "reasonably accorded less weight to Dr. Pollak's testimony than to that of Dr. Rottenberg and that consequently his conclusion that [Weiss'] disability continued beyond April, 1986 was appropriately supported."

The WCAC reviewed the magistrate's finding that Weiss' back injury was resolved by September 5, 1986. It said that while it is ordinarily required to defer to the findings of a magistrate who has had the opportunity to observe a witness testifying, where both the magistrate and the WCAC review deposition testimony, it is not required to give the magistrate's reading of the deposition "the same degree of restraint."

Reviewing the magistrate's findings, the WCAC observed that the magistrate based his opinion solely on Miller's deposition testimony. It then reviewed Miller's and Rottenberg's deposition testimony, and noted that Miller saw Weiss on only

one occasion, while Rottenberg was her treating physician. Both physicians had performed clinical tests with similar results, but interpreted those results differently. The WCAC explained why it found that Miller's physical examination of Weiss was "superficial and sorely lacking." It said that while Miller concluded, solely on the basis of his observation of Weiss during the examination, that her complaints of pain were exaggerated, Rottenberg performed a clinical test that objectively supported his conclusion that her complaints of pain were real.

After reviewing Miller's testimony and comparing his conclusions with those of Rottenberg, the WCAC explained why it found that Miller "consistently, if not arbitrarily, ignored not only all of the objective evidence but also many of the clinical findings derived from his one-time physical examination of the plaintiff." It concluded that Miller's testimony was biased in favor of his employer, the Jewish Home.

The WCAC said that " 'reliable testimony from a treating physician . . . is always preferable,' " to that of a one-time examining physician. Finally it explained why Weiss' back injury constituted a disability under the statute.[45]

The WCAC concluded that the magistrate's finding that Weiss' back injury had resolved itself as of the date of Miller's examination was unsupported by substantial evidence, and modified the magistrate's award to provide for an open award.

D

We again find that the WCAC did not exceed the appropriate exercise of its reviewing function.

The WCAC, after acknowledging the limited scope

___

[45] MCL 418.301; MSA 17.237(301).

of administrative appellate review, affirmed the magistrate's finding of personal injury, and explained why it found that it was supported by a preponderance of the evidence.

It next reviewed Weiss' claim that the magistrate's finding that her back injury had resolved itself was not supported by substantial evidence. It noted that while it was required ordinarily to defer to a magistrate's assessment of the testimony of live witnesses, this is not required when reviewing the testimony of experts who testify, as did the three physicians in this case, on deposition because then the magistrate is not in a better position than the WCAC to assess the evidence.

The WCAC observed that Miller saw Weiss on only one occasion, while Rottenberg was her treating physician. Both physicians had performed the same clinical tests with similar results, but interpreted those results differently. The WCAC explained why it found that Miller's physical examination of Weiss was "superficial and sorely lacking." It noted that while Miller concluded, solely on the basis of his observation of Weiss during the examination, that her complaints of pain were exaggerated, Rottenberg performed a clinical test that objectively supported his conclusion that her complaints of pain were real.

After reviewing Miller's deposition and comparing his conclusions with those of Rottenberg, the WCAC explained why it found that Miller "consistently, if not arbitrarily, ignored not only all of the objective evidence[,] but also many of the clinical findings derived from his one-time physical examination of the plaintiff."

The WCAC added that " 'reliable testimony from a treating physician . . . is always preferable,' " to that of a one-time examining physician. Finally

the WCAC explained why Weiss' back injury constituted a disability under the statute.

We conclude that the WCAC gave adequate reasons, grounded in the record, for reversing the fact finding of the magistrate.

E

The review by the Court of Appeals in *Weiss* of the WCAC's decision is generally illustrative of an appropriate judicial review of the WCAC's application of the substantial evidence standard.

The Court of Appeals reviewed the WCAC's decision, noting the legal standard that it was applying, and explaining why it gave greater weight to one expert's testimony and lesser weight to another. The Court noted that the WCAC had explained why it agreed with the magistrate that Weiss was disabled, and why it modified the magistrate's order to provide for an open award.

Then, having implicitly found that the WCAC correctly applied the substantial evidence test, the Court of Appeals found that there was "some competent evidence" to support the WCAC's factual determination that there was not substantial evidence in support of the magistrate's decision that Weiss' injury was resolved as of the date of Miller's examination in September, 1986.[46]

*Holden,* reversed; *Weiss,* affirmed.

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with LEVIN, J.

---

[46] Jewish Home argues that the Court of Appeals is constitutionally required to independently review the magistrate's decision before it reviews the WCAC's decision.

In light of the clear language of both the constitution and § 861a(14), this argument fails.