STOTT *v.* STOTT REALTY CO.

1. CORPORATIONS—PRIVILEGE FEES—VOID CHARTERS—CONTINUANCE OF EXISTENCE.

A corporation which fails to pay its statutory privilege fees does not cease to exist upon its charter becoming absolutely void but still continues a body corporate and remains a legally existing corporation for certain purposes (Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933).

2. SAME—VOID CHARTER—DISSOLUTION.

Voidance of a corporation's charter for nonpayment of statutory privilege fee does not, *ipso facto*, work a dissolution of the corporation (Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933).

3. SAME—VOID CHARTER—DISSOLUTION—REVIVAL.

A corporation whose charter has become void for nonpayment of its statutory privilege fee is not thereby dissolved, as the corporation then exists for the limited purpose of winding up its business and closing its affairs, not for the purpose for which it was authorized to do business on granting of the charter, and, not being dissolved, its full corporate powers may be revived upon compliance with statute authorizing revival (Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933; Act No. 53, Pub. Acts 1937).

4. SAME—CONSTITUTIONAL LAW—RESERVATION OF POWER TO ALTER, AMEND, OR REPEAL CHARTERS.

Under constitutional provision that ''all laws heretofore · or hereafter passed by the legislature for the formation of, · or conferring rights, privileges, or franchises upon corporations and all rights, privileges, or franchises conferred by such laws may be amended, altered, repealed, or abrogated,'' all charters of corporations organized pursuant to statutes enacted thereunder were accepted subject to the reservation of power to alter, amend, or repeal such charter as the constitutional provision constitutes a part of the charter of the corporation (Const. 1908, art. 12, § 1).

5. SAME—RESERVED POWER TO AMEND CHARTER—IMPAIRMENT OF CONTRACTS.

The reserved power to amend corporate charters prevents the charter from becoming a contract between State and corporation protected from impairment by the Constitution (Const. 1908, art. 12, § 1).

6. SAME—EXTENT OF ALTERATION OF A CHARTER.

The constitutional reservation of power in the legislature to amend corporate charters extends to any alteration which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the legislature may deem necessary to secure either that object or any public right or to promote the due administration of the affairs of the corporation (Const. 1908, art. 12, § 1).

7. CONSTITUTIONAL LAW—PRIVILEGES—EXEMPTIONS—FRANCHISES.

A citizen has no vested right in statutory privileges and exemptions; hence a franchise granted by the State with a reservation of a right to repeal must be regarded as a mere privilege while it is suffered to continue, the sole reliance of grantees being upon the faith of the sovereign grantor.

8. SAME—VALIDITY OF CURATIVE STATUTES.

Retrospective statutes curing defects in acts done, or authorizing or confirming the exercise of powers, are valid where the legislature originally had authority to confer the power or authorize the acts, except where it is attempted to impair vested rights.

9. CORPORATIONS—LEGISLATURE HAS POWER TO RENEW AND REVIVE CHARTERS.

The legislature has the power by general law to provide for the renewal and revival of the existence of a corporation after its charter has become void.

10. CONSTITUTIONAL LAW—VESTED RIGHTS—OMISSION TO LEGISLATE —CONTRACTS.

There can be no vested right in the omission to legislate upon a particular subject which exempts a contract from the effect of subsequent legislation upon its subject matter.

11. SAME—RETROACTIVE STATUTES.

The legislature may, by retroactive statutes, ratify and confirm any act which it might lawfully have authorized in the first instance, where the defect arises out of the neglect of some legal formality.

12. SAME—PROHIBITED AND PERMISSIBLE RETROACTIVE LAWS.

The constitutional prohibition of the passage of retroactive laws refers only to retroactive laws that injuriously affect some substantial or vested right, and does not refer to those remedies adopted by a legislative body for the purpose of providing a rule to secure for its citizens the enjoyment of some natural right, equitable and just in itself, but which they were not able to enforce on account of defects in the law or its omission to provide the relief necessary to secure such right.

13. SAME—REMEDIAL STATUTE AS DEFENSE IN ACTION COMMENCED BEFORE ENACTMENT.

Since there is no vested right to any particular remedy, a retrospective statute of a remedial nature, when passed after commencement of an action disputing the legality of certain proceedings cured by the passage of such act, may be urged as a defense to the action (Act No. 53, Pub. Acts 1937).

14. CORPORATIONS—VOID CHARTERS—STOCKHOLDERS—VESTED RIGHTS —STATUTES—AMENDMENT.

A stockholder has no vested right to have the charter of a corporation declared void for nonpayment of privilege fees on the ground that the statute under which it was organized could not thereafter be amended to provide otherwise.

15. SAME—RESTORATION OF RIGHT TO DO BUSINESS—STOCKHOLDERS —VESTED RIGHTS.

Restoration of a corporation to the right to do business, and giving it back its charter to carry on the purposes for which it was organized and for which it exists, is not a deprivation of a vested right of a stockholder to have it destroyed solely because there has been neglect to comply with a statutory tax requirement as a stockholder has no such vested right (Const. 1908, art. 12, § 1; Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933; Act No. 53, Pub. Acts 1937).

16. SAME—ENFORCEMENT OF PAYMENT OF REVENUE—STATUTES.

Statute requiring corporations to pay privilege taxes and suspending their right to do business for nonpayment is not primarily directed against the corporation but is for the purpose of enabling the State to enforce payment of its revenue (Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933).

17. SAME—POWER OF LEGISLATURE AS TO CORPORATE RIGHTS.

The legislature may abolish, restrict, or revive any corporate rights of any corporate body that may be in existence under the laws of the State.

18. SAME—CURATIVE STATUTES—DELINQUENT FEES.

Statute authorizing payment of portion of delinquent corporate fees and restoration of corporation's right to do business thereupon constitutes a removal of a disability and an abolition of a restriction of a statutory privilege, is within the power of the legislature to enact, and a corporation complying therewith becomes reinstated as a lawfully existing corporation (Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933; Act No. 53, Pub. Acts 1937).

19. SAME—REVIVAL OF ACTIVE STATUS—STOCKHOLDERS—ESTOPPEL.

Stockholder of corporation whose charter had become void for nonpayment of privilege fees and thereafter reinstated in its right to do business by payment of portion of delinquent fees upon enactment of statute after commencement of suit by such stockholder and others to compel winding up of corporate affairs *held*, estopped from questioning revival of corporation by participating in a stockholders' meeting, voting for directors, participating in directors' meeting and being elected an officer (Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933; Act No. 53, Pub. Acts 1937).

Appeal from Wayne; Ferguson (Homer), J. Submitted January 12, 1939. (Docket No. 63, Calendar No. 40,343.) Decided March 9, 1939.

Bill by Arthur F. Stott and others against Stott Realty Company and others to secure appointment of a receiver, an injunction, and other relief. Decree for defendants. Plaintiff Arthur F. Stott appeals. Affirmed.

*Edward N. Barnard,* for plaintiff Arthur F. Stott.

*Lewis & Watkins (Edwin C. Lewis* and *Clarence J. Boldt, Jr.,* and *David I. Hubar,* of counsel), for defendant Stott Realty Company.

*Friedman, Meyers & Keys,* for defendant David E. Stott.

*Nathan R. Berke,* for defendants Bertha A. Stott and Ethel Stott Kingsley.

McALLISTER, J.   Plaintiffs are stockholders in the Stott Realty Company, a corporation. Defendants include the corporation and other stockholders. On April 29, 1937, plaintiffs filed their bill of complaint, alleging that the charter of the corporation had become void for failure to pay its annual privilege fees for two consecutive years. They asked that a receiver be appointed and the business of the corporation wound up. On June 4, 1937, defendants filed answer denying that the corporation had ceased to exist, setting forth that the privilege fees in question had been paid since the filing of plaintiffs' bill, and that the corporation was then in good standing as evidenced by the certificate of the Michigan corporation and securities commission to that effect. Thereafter, on September 12, 1938, by leave of court, defendants filed a supplemental answer setting forth that subsequent to the filing of the bill and the original answer, a meeting of the stockholders of the defendant corporation was held, at which were present all the plaintiffs, or their proxies; that they voted to adopt new by-laws; elected, among others, as directors, the plaintiffs or their proxies; and that thereafter on May 9, 1938, plaintiffs or their said proxies were elected officers of the corporation by the previously elected directors; that since the latter date, the corporation had been continued by the parties as a going concern; and that by virtue of the foregoing, plaintiffs were estopped to question the corporate existence of defendant company. On the trial, the circuit court by decree dismissed the bill of complaint, hold-

ing that the charter of defendant corporation had been fully reinstated as a lawfully existing corporation, and that plaintiffs, by their participation in the stockholders' and directors' meetings and their conduct with reference to the company subsequent to the filing of this bill, were estopped in any event to deny its corporate existence. From such decree, plaintiff Arthur F. Stott appeals.

There is no dispute about the fact that the privilege fees of the corporation had been in default for two consecutive years without extension of time for payment thereof by the secretary of State, at the time of filing the bill of complaint. They were not paid until May 28, 1937.

Act No. 327, § 91, Pub. Acts 1931, as amended by Act No. 96, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 10135-91, Stat. Ann. § 21.91), in effect at the time of the filing of plaintiffs' bill, provided:

"If any profit corporation which has heretofore been, is now, or may hereafter be required to file its annual report with and pay a privilege fee to the secretary of State shall for two consecutive years neglect or refuse to file such report and/or to pay such fee, the charter of such corporation shall be absolutely void, without any judicial proceedings whatsoever, and such corporation shall be wound up in any manner provided by this act unless the secretary of State shall for good cause shown extend the time for the filing of such report or the payment of such fee as the case may be. In case of extension of time as provided in this section the secretary of State shall file in his office a certificate showing the length of time granted by such extension."

When suit was commenced, therefore, the charter of the company was absolutely void without the necessity of any legal proceedings. On May 27, 1937,

subsequent to the filing of the bill and prior to defendants' answer thereto, Act No. 53, Pub. Acts 1937, was enacted and given immediate effect. Such act in effect provides for the amendment of Act No. 327, § 91, Pub. Acts 1931 (Michigan general corporation act), as amended by Act No. 96, Pub. Acts 1933, (Comp. Laws Supp. 1937, § 10135–92f *et seq.;* Stat. Ann. 1938 Cum. Supp. § 21.243 *et seq.*), as follows:

"SECTION 1. All profit corporations whose charters have become void under the provisions of section ninety-one of act number three hundred twenty-seven of the public acts of nineteen hundred thirty-one, as amended, because of failure to file reports and/or to pay the fees, may file such reports upon the payment of a portion not less than one fourth of the total delinquent fees, without penalties, prior to December first, nineteen hundred thirty-seven. * * * And upon the acceptance and filing of such report and the payment of the first instalment of such delinquent fees, the voidance of charter of said corporation shall be waived and it shall be revived in full force and effect."

"SEC. 3. Upon compliance with the provisions * * * of this act, * * * the rights of such corporation * * * shall be the same as though no forfeiture had been operative and all contracts entered into and all other things done by the corporation which, except for the forfeiture of the charter, would have been legal and valid, shall, upon and during the revival of the corporation, have the same force and effect as though the charter of said corporation had always continued in full force and effect."

It was by virtue of the provisions of the above statute that payment of the defaulted privilege fees was made and as a result of which it is claimed such forfeiture was set aside and the company reinstated as a lawfully existing corporation.

Act No. 327, § 75, Pub. Acts 1931, as amended by
Act No. 96, Pub. Acts 1933 (Comp. Laws Supp. 1935,
§ 10135–75, Stat. Ann. § 21.75), in effect at the time
of the commencement of the present suit, provided
as follows:

"All corporations whose charters * * * shall be
annulled by forfeiture or in any other way or man-
ner have become void shall nevertheless continue to
be bodies corporate for the further term of three
years from such * * * forfeiture for the purpose
* * * of enabling them gradually to settle and close
their affairs and to dispose of and convey their prop-
erty and to divide their assets; but not for the pur-
pose of continuing the business for which such cor-
porations were organized."

The corporation does not cease to exist upon its
charter becoming absolutely void. It still continues
a body corporate and remains a legally existing cor-
poration for certain purposes. *Bruun* v. *Cook,* 280
Mich. 484. It is manifest that voidance of the char-
ter did not, *ipso facto,* work a dissolution of the cor-
poration. *Mathews* v. *Life Insurance Co. of Detroit,*
284 Mich. 352.

From the foregoing, it may be said that a corpora-
tion whose charter has become void may thereafter
be reinstated. The voiding of the corporate charter
does not work a dissolution and put an end to corpo-
rate life. While a corporation having had its charter
declared void cannot carry on corporate business for
the purposes for which it is authorized on the grant-
ing of its charter, it still exists for certain other pur-
poses of winding up its business and closing its
affairs. The corporation not having been dissolved
and still being in existence, its corporate powers may
be revived; and in this case, upon compliance with
the provisions of Act No. 53, Pub. Acts 1937, author-

izing such revival, the powers of defendant corporation were revived and the company reinstated as a lawfully existing corporation.

It is, however, contended by appellants that, at the time of filing of their bill, not only was the charter of the corporation void, but there was no law in existence providing, in such a case, for revival of the charter and reinstatement of the corporation; that the legislature had no power to enact a law providing for such reinstatement after the charter had become void *ipso facto;* and it is claimed that by reason of the decree of the court, plaintiffs, having secured certain vested rights to insist upon dissolution, have, it is implied, been deprived of their property in violation of the Constitution. Such claim requires consideration of the power of the legislature to revive and reinstate a corporation when such law is not enacted until after the charter has become void; and a determination of this question must be sought in the powers over corporations reserved to the legislature. Such powers are to be found either in statutes in effect at the time that the corporation was granted its charter, or in the Constitution.

Article 12, § 1, Const. of 1908, provides:

"All laws heretofore or hereafter passed by the legislature for the formation of, or conferring rights, privileges, or franchises upon corporations and all rights, privileges, or franchises conferred by such laws may be amended, altered, repealed, or abrogated."

All articles of association of corporations organized pursuant to statutes enacted while the above constitutional provision was in effect were accepted subject to the constitutional reservation of power to alter, amend, or repeal such charter, which constitutional provision constitutes a part of the charter of

the corporation. *Detroit Trust Co.* v. *Allinger,* 271 Mich. 600. Such reserved power of the State has been held to authorize the legislature to enact a statute permitting stockholders to cumulate their votes upon any one or more candidates for directors, such action not being unconstitutional as impairing the obligation of contracts (*Looker* v. *Maynard,* 179 U. S. 46 [21 Sup. Ct. 21], affirming * 111 Mich. 498 [56 L. R. A. 947]) and also to change their powers and rights in other particulars. A statute changing the right of voting for trustees from the members of a charitable corporation, as provided in the charter, to the board of trustees itself is within the power of the legislature. *In re Mt. Sinai Hospital,* 250 N. Y. 103 (164 N. E. 871, 62 A. L. R. 564).

"The reserved power to amend corporate charters prevents the charter from becoming a contract between State and corporation protected from impairment by the Constitution. * * * Any alteration may be made 'which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the legislature may deem necessary to secure either that object or any public right' or 'to promote due administration of the affairs of the corporation.' " *In re Mt. Sinai Hospital, supra.*

See also *Hamilton Gaslight & Coke Co.* v. *Hamilton City,* 146 U. S. 258 (13 Sup. Ct. 90); *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.,* 104 Mass. 446 (6 Am. Rep. 247).

It is a general rule of constitutional law that a citizen has no vested right in statutory privileges and exemptions. Cooley's Constitutional Limitations (7th Ed.), p. 546, *Brearly School, Ltd.,* v. *Ward,* 201 N. Y. 358 (94 N. E. 1001, 40 L. R. A. [N. S.] 1215, Ann. Cas. 1912 B, 251); and a franchise granted by

---

* *Attorney General, ex rel. Dusenbury,* v. *Looker.*—Reporter.

the State with a reservation of a right to repeal must be regarded as a mere privilege while it is suffered to continue, but the legislature may take it away at any time and the grantees must rely for the perpetuity and integrity of the franchises granted to them solely upon the faith of the sovereign grantor. Cooley's Constitutional Limitations (7th Ed.), p. 547.

Retrospective statutes curing defects in acts done, or authorizing or confirming the exercise of powers, are valid where the legislature originally had authority to confer the power or authorize the acts, except where it is attempted to impair vested rights. 12 C. J. p. 1091.

The legislature has the power by general law to provide for the renewal and revival of the existence of a corporation after the charter of the corporation has become void.

In *Federal Crude Oil Co.* v. *Yount-Lee Oil Co.* (1932), 122 Tex. 21 (52 S. W. [2d] 56), the right of a corporation to do business had been forfeited for failure to pay the franchise tax. Subsequent to the default, a statute was enacted providing for the revival of corporate rights upon payment of such defaulted tax. Thereafter the corporation paid the tax and it was held that the corporate right to do business was revived. In *McClung* v. *Hill* (C. C. A.), 96 Fed. (2d) 236, where a corporation which had been dissolved under a statute providing therefor for default in payment of franchise fees and including further provisions that the corporation be continued a body corporate for a winding up period of three years, paid the fees in default under a statute passed subsequent thereto providing for revival of corporate rights on such payment, it was held that the corporation was revived by such retrospective

statute. See, also, *Diamond State Iron Co.* v. *Husbands,* 8 Del. Ch. 205 (68 Atl. 240) ; *Lincoln & Kennebec Bank* v. *Richardson,* 1 Me. 79 (10 Am. Dec. 34) ; *Brown* v. *Chesterville Academy Society,* 3 Richardson (S. C. Eq.), 362.

There can be no vested right in the omission to legislate upon a particular subject which exempts a contract from the effect of subsequent legislation upon its subject matter. *Harsha* v. *City of Detroit,* 261 Mich. 586 (90 A. L. R. 853). A statute which gives certain creditors' claims, after their accrual, priority in a bankruptcy proceeding is one which affects the remedy. The interests affected are too contingent, too remote, and too insubstantial to demand protection. *In re Inland Dredging Corp.* (C. C. A.), 61 Fed. (2d) 765 (88 A. L. R. 254).

The legislature may, by retroactive statutes, ratify and confirm any act which it might lawfully have authorized in the first instance, where the defect arises out of the neglect of some legal formality.

The constitutional prohibition of the·passage of retroactive laws refers only to retroactive laws that injuriously affect some substantial or vested right, and "does not refer to those remedies adopted by a legislative body for the purpose of providing a rule to secure for its citizens the enjoyment of some natural right, equitable and just in itself, but which they were not able to enforce on account of defects in the law or its omission to provide the relief necessary to secure such right." *Mills* v. *Geer,* 111 Ga. 275 (36 S. E. 673, 52 L. R. A. 934).

There is no vested right to any particular remedy. Cooley's Constitutional Limitations (7th Ed.), p. 515 ; *National Surety Co.* v. *Architectural Decorating Co.,* 226 U. S. 276 (33 Sup. Ct. 17). A retrospective statute of a remedial nature, when passed after

commencement of an action disputing the legality of certain proceedings cured by the passage of such act, may be urged as a defense to the action. 11 Am. Jur. p. 1209.

A stockholder has no vested right to have the charter declared void for nonpayment of the fees on the ground that the statute under which it was organized could not thereafter be amended to provide otherwise. Under the reserved power the State can revive the corporation.

"If the State by abolishing a corporate charter may destroy completely the right of a corporation as an entity to prosecute or defend an action in the courts, it logically follows that it possesses the lesser power of restricting a corporation's right to the use of our courts only so long as it discharges its obligation to the State by the payment of the required franchise fees." *Federal Crude Oil Co.* v. *Yount-Lee Oil Co., supra.*

To restore a corporation to the right to do business, to give it back its charter to carry on the purposes for which it was organized and for which it exists, does not deprive a stockholder of any vested right to have it destroyed for the sole reason that there has been neglect to comply with a tax requirement.

"These respective acts were not primarily directed against corporations; they were revenue acts pure and simple, and the provisions directed against corporations were for the purpose of enabling the State to enforce the payment of its revenue." *State, ex rel. Preston Mill Co.,* v. *Howell,* 67 Wash. 377 (121 Pac. 861, 863).

No such vested right exists. In this holding, we differ from the conclusions reached in *Rossi* v. *Caire,*

186 Cal. 544 (199 Pac. 1042). The law in question was not an oppressive or harsh enactment. It was to enable corporations to carry out their objects—the very purposes for which they were created. It was to remove a disability and abolish a restriction of a statutory privilege which had been previously granted and at the time was suspended. The legislature may abolish, restrict, or revive any corporate rights of any corporate body that may be in existence under the laws of the State. In the instant case, the legislature had the power to enact the statute in question. The corporate powers of defendant company were revived upon compliance therewith, and the company was thereupon reinstated as a lawfully existing corporation.

Appellant after the commencement of suit, and prior to the filing of the amended answer, attended a stockholders' meeting, voted for directors, participated in a directors' meeting, took part in an election of officers, and was himself elected vice-president. By his conduct in recognizing the company as a functioning corporation, participating in corporate activities, and dealing with it as an existing corporate body, plaintiff is estopped from questioning the revival of the corporation by payment of the defaulted fees, which was made prior to his participation in the above acts.

Decree affirmed, with costs to defendants.

Butzel, C. J., and Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred. North, J., took no part in this decision.