SOKOLEK v GENERAL MOTORS CORPORATION

MULLINS v FRANK H WILSON COMPANY

RIZA v DELRAY BAKING COMPANY

Docket Nos. 100072, 95551, 97960, 97961. Argued May 4, 1995 (Calendar Nos. 13-14). Decided August 22, 1995.

Janet L. Sokolek was awarded worker's compensation for back injuries suffered on April 16, 1980, that arose out of her employment with General Motors Corporation. On October 14, 1985, she petitioned for nursing and attendant care benefits provided by her husband. The magistrate awarded compensation. The Worker's Compensation Appeal Board affirmed, finding that the one-year-back rule, MCL 418.381(3); MSA 17.237(381)(3), did not apply to injuries that occurred before July 30, 1985, the effective date of the statute. The Court of Appeals, HOOD, P.J., and WAHLS and SULLIVAN, JJ., in an unpublished order, denied leave to appeal (Docket No. 146817). The Michigan Supreme Court initially denied leave to appeal, but, on reconsideration, remanded the case to the Court of Appeals for consideration as on leave granted whether § 381(3) applied. 442 Mich 924 (1993). On remand, the Court, HOOD, P.J., and CAVANAGH and D. A. TEEPLE, JJ., affirmed in an opinion per curiam (Docket No. 166408). The defendant appeals.

Charles H. Mullins sought worker's compensation, alleging severe heart and lung conditions that arose out of his employment with Frank H. Wilson Company. A hearing referee awarded benefits, finding him to be disabled and entitled to reimbursement for nursing and attendant care services provided by his wife and daughter from February 17, 1984. After July 30, 1985, the number of compensable hours were limited to fifty-six hours a week pursuant to MCL 418.315(1); MSA 17.237(315)(1). The compensation rate was based on the rate that would be charged by an agency, subject to cost-of-living increases. The Worker's Compensation Appeal Board held that § 315(1) did not apply, reversed the reimbursement limitation, and affirmed the compensation rate, but not the cost-of-living increases. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and WEAVER and McDONALD, JJ., in an unpublished opinion per curiam, affirmed

in part and reversed in part, holding that the limitation should not apply because the plaintiff was injured before the effective date of the statute, July 30, 1985, and that retroactive application was not appropriate because it affected a substantive right. The Court further affirmed the WCAB's refusal to enforce the cost-of-living increases, but reversed with regard to the compensation rate (Docket No. 139268). The defendants appeal, and the plaintiff cross appeals.

Halil Riza was employed by the Delray Baking Company until January 1, 1971. It was subsequently determined that he had a continuing psychiatric disability. On December 29, 1981, he sought worker's compensation, claiming to be totally and permanently disabled. On December 4, 1984, his wife petitioned for reimbursement for nursing and attendant care services she had been providing for him. A magistrate held that the plaintiff was not totally and permanently disabled, but did not address the request for reimbursement. The Worker's Compensation Appeal Board reversed, finding total and permanent disability, and ordered reimbursement for all nursing and attendant care provided from December 1, 1983, to July 30, 1985, and thereafter limited the award to fifty-six hours a week pursuant to § 315(1). The Court of Appeals, WAHLS, P.J., and WEAVER and CORRIGAN, JJ., reversed in an opinion per curiam, holding that the fifty-six-hour limitation of § 315(1) must be applied retroactively (Docket Nos. 143090, 143173). The plaintiffs appeal.

In separate opinions, the Supreme Court *held:*

Although the plaintiffs were injured before July 30, 1985, the amendments of MCL 418.315(1), 418.381(3); MSA 17.237(315)(1), 17.237(381)(3) by 1985 PA 103 apply to services rendered for them prospectively from July 30, 1985.

1. In *Riza* and *Mullins,* the fifty-six hour a week limitation applies only to services rendered on and after July 30, 1985, and not before. In *Sokolek,* the one-year-back limitation does not apply to services rendered before July 30, 1985. Because the plaintiff sought compensation on October 14, 1985, within one year of the effective date, she may recover for services rendered through October 14, 1985.

2. In *Mullins,* the record is devoid of sufficient information to find that the plaintiff should be compensated for his wife's attendant care at the rate charged by a home nursing agency. In addition, while $3.75 an hour may have been fair compensation for attendant care a decade ago, there is little doubt that this figure, well under the current minimum wage, is no longer

adequate. Thus, remand to the magistrate is required for a determination of reasonable compensation under the facts.

Chief Justice BRICKLEY and Justice LEVIN, joined by Justice MALLETT, stated that absent something in the language or in the history of Act 103 that would justify the conclusion that the Legislature did not intend that these amendments would become effective with respect to weekly benefit periods commencing on and after the July 30, 1985, effective date, without regard to whether the injury or disability occurred before that date, these amendments are effective with respect to weekly benefit periods commencing on and after July 30, 1985, whether or not the injury or disability occurred before that date.

Justice BOYLE, concurring in part and dissenting in part, stated that eliminating the procedural/substantive inquiry overrules a vast body of law that is well entrenched in Michigan jurisprudence, an approach the Legislature has necessarily taken into account when amending statutory provisions. Without a compelling justification, this approach to statutory interpretation should not be abandoned.

The fifty-six-hour limitation is a procedural modification because the amendment limits only the family's right to compensation. Section 315 merely codifies, with the fifty-six-hour limitation, the existing right of the family to receive compensation—a right created by the courts. The limitation does not affect the essence of the right, but merely the amount of compensation that a caregiver, eventually may receive. Thus, the amendment is procedural and can be applied retroactively.

The defendant in *Sokolek* did not properly preserve the question whether the one-year-back rule should be given retroactive effect, and it is therefore waived. The defendant did not argue before the WCAB or in its initial application to the Court of Appeals that the one-year-back limitation is procedural and that it should apply retroactively. Instead, the defendant relied solely on the contention that because the plaintiff filed for compensation after the effective date of the amendment, it applied to the plaintiff's claim.

Justice RILEY, joined by Justice WEAVER, dissenting, stated that a caregiver is not entitled to compensation unless or until service is rendered. Attendant care services may be provided at any time following an injury. As a result, the caregiver's right to compensation accrues as services are rendered and the law in effect on the date that service is provided governs the caregiver's right to compensation, subject to a determination of whether the amendment is procedural/remedial or substantive

in nature. Application of this rule in *Mullins* and *Riza* would dictate that plaintiffs be awarded compensation without regard to the fifty-six-hour limitation until the effective date of the statute. After the effective date, plaintiffs' rights would be subject to the fifty-six-hour limitation because the rights accrue as service is provided. However, this result is subject to a determination whether the statute is procedural/remedial or substantive in nature. It is well established that a procedural/remedial statute applies retroactively. Because the statute is procedural, the fifty-six-hour limitation should be applied retroactively. In *Sokolek*, plaintiff would not be limited by the one-year-back rule because service was provided during the time before the amendment became effective. This result is preempted by the limitation binding on the hearing referee and Worker's Compensation Appeal Board that "payments shall not be made."

The statutory fifty-six-hour limitation on attendant care services, as amended by 1985 PA 103, is procedural in nature because it only affects the amount of compensation to which claimants are entitled. The amendments at issue in *Mullins* and *Riza* should properly be characterized as procedural in that they only affect the number of hours a week for which the caregiver may be compensated. While the amendment may have reduced the amount of compensation the plaintiffs will receive for attendant care benefits, it did not eradicate the right to compensation.

It is unnecessary to remand *Mullins* to the magistrate to determine what compensation is reasonable. Review of the decision of the Worker's Compensation Appeal Board indicates that the issue should have been resolved. The rate payable to the attendant caregiver should be the rate consistent with the testimony of the home health care expert.

Cost-of-living increases are properly considered when determining the prevailing wage for an attendant caregiver when services are rendered.

Justice CAVANAGH, dissenting, stated that the date of injury fixes a claimant's entitlement to attendant or nursing care as provided by MCL 418.315(1); MSA 17.237(315)(1), because it is the injury itself that gives rise to the entitlement to benefits. Because an injured worker's right to benefits accrues on the date of injury, the law in effect at the time of the work-related injury is controlling.

*Sokolek* affirmed.

*Riza* reversed.

*Mullins* affirmed in part, reversed in part, and remanded.

200 Mich App 169; 504 NW2d 193 (1993) reversed.

206 Mich App 31; 520 NW2d 668 (1994) affirmed.

*Freid, Gallagher, Taylor & Associates, P.C.* (by *Debra A. Freid*), for Sokolek.

*Charles G. Gale* for Mullins.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Granner S. Ries*), for Riza.

*Munroe & Nobach, P.C.* (by *Cameron C. McComb*), for the defendant in *Sokolek.*

*Sinn, Day, Felker, Chinitz, Lovernick & Roggenbaum, P.C.* (by *William A. Day*), and *Daryl C. Royal,* for the defendants-appellants Frank H. Wilson Company and Citizens Insurance Company of America.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for the defendants-appellees Delray Baking Company and West American Insurance Company.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Morrison Zack,* Assistant Attorney General, for Director, Michigan Bureau of Worker's Disability Compensation.

BRICKLEY, C.J., and LEVIN, J.

I

*RIZA v DELRAY BAKING CO*

Halil Riza was employed at the Delray Baking Company until his last day of work, January 1, 1971. It was subsequently determined that Mr. Riza had a continuing psychiatric disability.

The plaintiff filed the current action on December 29, 1981, claiming to be totally and permanently disabled. On December 4, 1984, his wife filed a petition requesting reimbursement for nursing and attendant care services she had been providing for the plaintiff. After a hearing, Magistrate Lanita Haith held that the plaintiff was not totally and permanently disabled. The magistrate did not address the request for reimbursement from Mrs. Riza.

The plaintiff appealed, and the WCAB reversed. 1991 WCABO 1535. The WCAB found the plaintiff to be totally and permanently disabled, and ordered the defendant to reimburse Mrs. Riza for all nursing and attendant care provided for the plaintiff from December 1, 1983, to July 30, 1985. After July 30, 1985, however, the board limited the award to compensation for fifty-six hours of work by Mrs. Riza per week, citing § 315(1) of the Worker's Disability Compensation Act, an amendment that came into effect on that date. The amendment provides, in relevant part:

> Attendant or nursing care shall not be ordered in excess of 56 hours per week if such care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons. [MCL 418.315(1); MSA 17.237(315)(1).]

The WCAB held that the statute applied to all payments made after its effective date.

Both the plaintiff and the defendant appealed to the Court of Appeals. That Court reversed the decision of the WCAB and held that the fifty-six-hour limitation in § 315(1) must be applied retroactively. The statutory language, "shall not be ordered," was found to be indicative of a legislative intent to apply the statute to all injuries for which

compensation was ordered after the effective date of the statute, regardless of the injury date. 200 Mich App 169; 504 NW2d 193 (1993). We subsequently granted leave to appeal. 448 Mich 852 (1995).

### MULLINS v FRANK H WILSON CO

Mr. Charles Mullins worked for the Frank H. Wilson Company until February 16, 1984, when he was forced to quit because of several severe heart and lung conditions. Mr. Mullins filed a petition for hearing with the WCAB on March 5, 1984. The hearing referee, Steven C. Washington, found him to be disabled and entitled to an open award of benefits.

The referee also found that the plaintiff was entitled to be reimbursed for the nursing and attendant care services provided by his wife and daughter. Benefits were awarded for nursing care from February 17, 1984, onward. After July 30, 1985, however, the referee limited the number of compensable hours for such services to fifty-six a week under § 315(1). The referee awarded the plaintiff a compensation rate based on the rate, $7 an hour, that would be charged by an agency that provided home care, and stated that the yearly rate of compensation would be, "subject to cost-of-living increases."

Both the plaintiff and the defendant appealed the referee's decision. The plaintiff argued that the fifty-six-hour limitation did not apply to him because his injury occurred before July 30, 1985. The defendant argued that the fifty-six-hour limitation should have been applied retroactively to the time of the plaintiff's injury. It also contended that the plaintiff should only have been awarded compensation equivalent to the going rate for an

independently hired nurse's aid, rather than the rate charged by an agency, and that the cost-of-living increases awarded by the referee were inappropriate.

The WCAB affirmed in part and reversed in part. The board held that § 315(1) did not apply to Mr. Mullins. Hence, the referee's decision to limit reimbursement for nursing and attendant care to fifty-six hours a week after July 30, 1985, was reversed. The board affirmed the referee's decision to award compensation at the rate of $7 an hour, but held that the cost-of-living increases were "unenforceable and without any method by which to compute said cost-of-living increases . . . ." 1991 WCABO 331, 340.

Both parties appealed to the Court of Appeals, which affirmed in part and reversed in part. The Court held that the fifty-six hour a week limitation on compensation for nursing and attendant care imposed by § 315(1) should not apply to the plaintiff, because Mr. Mullins was injured before the effective date of the statute. Retroactive application of the amendment was inappropriate because it affected a substantive right. The Court also affirmed the WCAB's refusal to enforce the cost-of-living increases awarded in the referee's opinion, and reversed the WCAB's decision to award the plaintiff the $7 an hour rate charged by home care agencies. Unpublished opinion per curiam of the Court of Appeals, issued December 9, 1992 (Docket No. 139268). Both parties appealed to this Court, and we granted leave in an unlimited order.[1] 448 Mich 852 (1995).

---

[1] The cost of living and rate of compensation issues in *Mullins* are not relevant to the other cases decided in this consolidated opinion. In the interest of clarity, they will not be discussed until after the issues common to all three opinions have been resolved.

*SOKOLEK v GENERAL MOTORS CORP*

Janet Sokolek was an employee of General Motors Corporation. Ms. Sokolek suffered an injury to her back while at work on April 16, 1980. She petitioned for worker's compensation benefits and received an open award in November, 1981.

On October 14, 1985, Ms. Sokolek filed a petition to obtain compensation for nursing and attendant care provided by her husband. The magistrate found that the plaintiff was entitled to compensation, and the defendant appealed the decision to the WCAB. GM argued that the magistrate had erred in not applying § 381(3) of the WDCA, the "one-year-back rule." Like § 315(1), the one-year-back rule applying to nursing and attendant care became effective on July 30, 1985. The amendment provides:

> Payment for nursing or attendant care shall not be made for any period which is more than 1 year before the date an application for a hearing is filed with the bureau. [MCL 418.381(3); MSA 17.237(381)(3).]

The WCAB found that the amendment did not apply to injuries that occurred before July 30, 1985. It thereby affirmed the decision of the magistrate.

The Court of Appeals denied the defendant's application for leave to appeal. Unpublished order, entered July 1, 1992 (Docket No. 146817). The defendant then appealed to this Court. We also denied leave initially, but on the defendant's motion for rehearing, we remanded the case to the Court of Appeals for consideration as on leave granted the defendant's claim that § 381(3) applied to these facts. 442 Mich 924 (1993). On remand, the Court of Appeals affirmed the decision of the

WCAB. 206 Mich App 31; 520 NW2d 668 (1994). The defendant again appealed to this Court, and we granted leave. 447 Mich 1048 (1994).

II

1985 PA 103 added the following sentence to § 315 of the Worker's Compensation Act:

> Attendant or nursing care shall not be ordered in excess of 56 hours per week if such care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons.[2]

Act 103 added the following sentence to § 381:

> Payment for nursing or attendant care shall not be made for any period which is more than 1 year before the date an application for a hearing is filed with the bureau.[3]

The question presented is whether these provisions, limiting the amount of medical benefits payable by an employer or its insurer in respect to an injured worker, apply retroactively in respect to injuries suffered before the July 30, 1985, effective date of Act 103, or apply prospectively.

Cognizant of the fact that the decision in these cases overrules, sub silentio, prior decisions of this Court, we hold that, although the workers in the instant cases were injured before July 30, 1985, these provisions apply to all services rendered on and after the July 30, 1985, effective date. Thus, in *Riza* and *Mullins* services rendered before July 30, 1985, are compensable without regard to the fifty-six hour a week limitation, and services rendered on and after July 30, 1985, are subject to

---

[2] MCL 418.315(1); MSA 17.237(315)(1).

[3] MCL 418.381(3); MSA 17.237(381)(3).

the fifty-six hour a week limitation. In *Sokolek,* the one-year-back limitation is not effective regarding nursing or attendant care services rendered before July 30, 1985, with the result that Ms. Sokolek, who filed on October 14, 1985, within a few months and hence within one year of the July 30 effective date of Act 103, may recover for all services rendered through October 14, 1985.

Worker's compensation benefits are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated. *Franks v White Pine Copper Div,* 422 Mich 636, 654; 375 NW2d 715 (1985). In *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959), this Court held that the Legislature could increase medical benefits effective retroactively to include persons injured before the effective date of the amendatory act. Similarly, the Legislature may, as here, reduce medical benefits.[4]

Absent something in the language or in the history of Act 103 that would justify the conclusion that the Legislature did not intend that these amendments would become effective with respect to weekly benefit periods commencing on and after the July 30, 1985, effective date, without regard to whether the injury or disability occurred before that date, we hold that these amendments are effective with respect to weekly benefit periods commencing on and after July 30, 1985, whether or not the injury or disability occurred before that date.[5]

### III

### A

Two issues appealed in *Mullins v Frank H Wil-*

---

[4] See *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985).

[5] *Hurd, supra* at 540 (opinion of LEVIN, J.).

*son Co* remain to be decided. We granted the plaintiff's application to appeal the Court of Appeals determination that he was entitled to be compensated for the attendant care of his wife only at the rate charged by a nurse's aid hired independently, rather than at the rate paid to an agency for such a service. We also agreed to decide the propriety of the hearing referee's award of cost-of-living increases, which was reversed by the WCAB and the Court of Appeals as, "unenforceable."

At the hearing before the referee, the only testimony concerning the appropriate rate of compensation for home health care was that of the plaintiff's expert, Karen Hoffner. Ms. Hoffner testified that hiring a "homemaker companion" through a nursing agency would cost between $7 and $7.25 an hour. She also testified that a homemaker companion could be hired independent of such an agency, and that this would cost $3.75 an hour. This lower rate also apparently approximates the amount a homemaker companion would be paid if that person worked for a nursing agency. The difference in price, about $3.25 an hour, is taken by the agency, presumably to pay for overhead costs and for profit.

The statutory provision at issue provides:

> The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of this state as legal, when they are needed. [MCL 418.315(1); MSA 17.237(315)(1).]

The term, "reasonable," refers not only to the services to be performed, but to the compensation

to be paid to the provider of such services. *Kosiel v Arrow Liquors Corp,* 446 Mich 374, 383; 521 NW2d 531 (1994).

The defendant argues that there is no reason why the plaintiff's wife should receive the extra money that an agency charges to address administrative costs. Although we agree that this argument is logically compelling, we hold that what level of compensation is reasonable is a factual determination for the magistrate to decide.

This is in accord with our decision in *Kosiel.* In that case we held that a magistrate could order a certain level of compensation, "until the further order" from the board, allowing a possible revision in the compensation rate at an unspecified point in the future. *Id.* at 382. We reasoned in part that the magistrate was following the dictates of the statute, by including a temporal aspect in the determination of what reasonable compensation was. The factual nature of the issue of reasonable compensation was implicit in this decision. *Id.* at 382-383.

Moreover, the magistrate is in a better position than an appellate court to make this determination. The record before us on appeal is limited, and it is difficult for us to know whether it would be appropriate to award at least part of the extra expense required to hire a home companion from a nursing agency. Many considerations may be necessary to make such a determination.

For example, the cost of minimal benefits and social security contributions may be included in the higher hourly rate paid to a nursing agency, and it may be necessary to provide similar benefits to an independent companion, over and above a standard salary. Nursing agencies may also pay to provide training to their employees above and beyond the abilities of an independent companion,

training that may be necessary to care for the plaintiff. In short, this is a multifaceted factual issue, involving the various types of in-home care available, the duties performed by them, their customary billing and payment practices, and the type of services being performed by the plaintiff's wife. *Brown v Eller Outdoor Advertising Co,* 139 Mich App 7, 10; 360 NW2d 322 (1984).

The magistrate did not provide an explanation for his finding that the plaintiff should be compensated for his wife's attendant care at the rate charged by a home nursing agency. We believe the record to be devoid of sufficient information to make such a finding. We therefore remand this portion of the case to the magistrate, to determine what compensation is reasonable under these facts.

B

The hearing referee awarded the plaintiff's compensation, "subject to cost-of-living increases." The WCAB held that this provision of the award was, "unenforceable," and the Court of Appeals affirmed. We find that our opinion in *Kosiel, supra,* also controls the resolution of this issue.

In *Kosiel,* the magistrate ordered a certain level of compensation, "until the further order of the Department." We stated that the order

did not represent a final determination of the value of nursing services for the duration of plaintiff's life; rather, it contemplated the need to adjust the amount at some point in the future in response to such changes as increases or decreases in wage rates or inflation.

* * *

Like the statutory standard, the order provides the necessary flexibility to allow a future determi-

nation or "reasonableness" in keeping with the
humanitarian objectives that underlie the WDCA.
[*Id.* at 381-383.]

Obviously, then, a magistrate is empowered to
award cost-of-living increases at a time after a
nonfinal determination when such increases are
appropriate.

We find that the hearing referee's order in this
case served the same permissible purpose as the
order in *Kosiel,* to allow the plaintiff's award to
evolve as conditions changed. Admittedly, the or-
der in this case is more troublesome, because it
provided an award that was not specific or deter-
minable by some set formula. Because this *type* of
award is permissible, however, we think it best to
remand this aspect of the case to the magistrate,
as part of the determination of what compensation
is reasonable in this case. We feel that it would be
inequitable, as well as contrary to the spirit of our
reasoning in *Kosiel,* to hold that the services of the
plaintiff's wife must be compensated at a level
found to be appropriate in 1985. The Court of
Appeals may or may not be correct in its assess-
ment that $3.75 an hour was fair compensation for
attendant care a decade ago, but there is little
doubt that this figure, well under the current
minimum wage, is no longer adequate.

*Sokolek* affirmed.

*Riza* reversed.

*Mullins* affirmed in part, reversed in part, and
remanded.

MALLETT, J., concurred with BRICKLEY, C.J., and
LEVIN, J.

BOYLE, J. (*concurring in part and dissenting in
part*). I agree with part III of the lead opinion, but

I would not reject the procedural/substantive inquiry in determining the effect of amendments of the Worker's Disability Compensation Act. MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* Today, the lead opinion, virtually without comment or analysis, adopts an approach we have repeatedly rejected when addressing other amendments of the Worker's Disability Compensation Act. See, generally, *Franks v White Pine Copper Div,* 422 Mich 636, 678; 375 NW2d 715 (1985) (LEVIN, J., dissenting); *Hurd v Ford Motor Co,* 423 Mich 531, 536; 337 NW2d 300 (1985) (LEVIN, J., dissenting); *Selk v Detroit Plastic Products,* 419 Mich 1, 15; 345 NW2d 184 (1984) (LEVIN, J., dissenting). Eliminating the procedural/substantive inquiry overrules a vast body of law that is well entrenched in our jurisprudence, an approach the Legislature has necessarily taken into account when amending statutory provisions. Without a compelling justification, which the lead opinion does not provide, I would not abandon this approach to statutory interpretation.

Rather, I agree with Justice RILEY's analysis of when a third-party caregiver's cause of action accrues, continued reliance on a substantive/procedural analysis to determine whether an amendment should be given retroactive effect, and decision that the fifty-six-hour limitation,[1] at issue in *Riza* and *Mullins,* is procedural and therefore should apply retroactively.

The fifty-six-hour limitation is a procedural modification because the amendment limits only the family's right to compensation. Section 315 merely codifies, with a fifty-six-hour limitation, the existing right of the family to receive compensation—a right created by the courts. See *Kushay v Sexton Dairy Co,* 394 Mich 69; 228 NW2d 205 (1975);

[1] MCL 418.315(1); MSA 17.237(315)(1).

*Brown v Eller Outdoor Advertising Co,* 111 Mich App 538; 314 NW2d 685 (1981). The limitation does not affect the essence of the right, but merely "the amount of compensation which [the caregiver] may eventually receive." *White v General Motors Corp,* 431 Mich 387, 395; 429 NW2d 576 (1988). Thus, the amendment is procedural and can be applied retroactively.[2]

I disagree, however, with Justice RILEY's decision to reach the question whether the one-year-back limitation[3] on recovery for attendant or nursing care, at issue in *Sokolek,* should be retroactively applied.

The defendant in *Sokolek* did not properly preserve the question whether the one-year-back rule should be given retroactive effect, and it is therefore waived. The defendant did not argue before the WCAB or in its initial application to the Court of Appeals that the one-year-back limitation is procedural and that it should therefore apply retroactively. Instead, defendant relied solely on the contention that because the plaintiff filed for compensation after the effective date of the amendment, the amendment applied to the plaintiff's claim. The final paragraph of the Court of Appeals opinion accurately notes:

---

[2] I wish to explicitly note that the question whether an insurer or employer can recoup payments already made to familial caregivers is not before us. It would appear that although the familial caregiver may not have been entitled to receive compensation for care rendered in excess of fifty-six hours, the insurer or the employer is not injured because payment for care, to the extent allowed in the injured worker's award, would still have been paid by the insurer or the employer; although the payee would have been a nonfamilial caregiver. Regardless, the parties have not argued or briefed this issue and cognizant of the similar problems created by our opinion in *Franks v White Pine Copper, supra,* I expressly note that this case does not authorize employers or insurers to recoup payments made to familial caregivers in excess of fifty-six hours or to recover for payments made for care rendered more than one year back.

[3] MCL 418.381(3); MSA 17.237(381)(3).

> Because the issue whether § 381(3) should be
> applied retroactively because it is remedial was
> not raised by defendant either before this Court or
> before the WCAB, that issue has not been preserved
> for appellate consideration and must be considered
> waived. *Achtenberg v East Lansing,* 421 Mich 765,
> 773; 364 NW2d 277 (1985); *Wiand v Wiand,* 178
> Mich App 137, 150; 443 NW2d 464 (1989). [206
> Mich App 31, 36-37; 520 NW2d 668 (1994).]

I agree with the Court of Appeals that because
defendant did not raise this argument below, it is
not properly preserved. Because the date of filing
has no relevance in determining whether a statu-
tory amendment applies to a third-party care-
giver's cause of action, and defendant's belated
argument that the amendment should apply retro-
actively is not preserved for review, I would affirm
the Court of Appeals decision in *Sokolek.*

RILEY, J. (*dissenting*).

I

A

The majority willingly overrules a significant
line of cases, in which this Court has concluded
that a disabled person's right to worker's compen-
sation is governed by the law in effect on the date
of injury.[1] It is imperative, however, that we in-
stead distinguish that line of cases involving the
*disabled person's* right to compensation from the
present cases in which we are presented with a
*third-party* caregiver's right to compensation that

---

[1] "It has long been the rule in Michigan that in worker's compensa-
tion cases the law in effect at the time of the relevant injury must be
applied unless the Legislature clearly indicates a contrary intention."
*Nicholson v Lansing Bd of Ed,* 423 Mich 89, 93; 377 NW2d 292 (1985).
See *Franks v White Pine Copper Div,* 422 Mich 636; 375 NW2d 715
(1985); *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985);
*White v General Motors Corp,* 431 Mich 387; 429 NW2d 576 (1988).

does not necessarily accrue on the date the employee is injured.[2] The present cases should be distinguished on this basis.

In *Grogan v Manistique Papers, Inc,* 154 Mich App 454; 397 NW2d 825 (1986), the Court of Appeals was asked to decide whether the Second Injury Fund could be reimbursed for benefits paid to an injured worker as the result of a third-party tort action. The fund based its claim on an amendment of the Worker's Disability Compensation Act that had come into effect on May 8, 1984. The Court of Appeals reasoned:

> The pertinent inquiry that must be made in the present case is what event or circumstances triggers the application of MCL 418.531(3); MSA 17.237(531)(3). Plaintiff contends that the date of the injury is the crucial event, while the fund asserts recovery from the third party triggers the application of the statute. After considering the arguments made by parties to this case, we find the argument made by the Second Injury Fund to be persuasive.
>
> Although the Legislature made the statute effective immediately on May 8, 1984, it did not clearly express what event was required to occur after the effective date in order to trigger application. . . . While it is true that it is the injury which allows an injured worker to recover workers' compensation benefits, under § 827(5) it is not until recovery is obtained from a third party that the Second Injury Fund has a right to reimbursement. [*Id.* at 460.]

Similarly, in this case, the transaction or event that most naturally triggers application of the amendments at issue is not the injury, but the actual rendering of services.

[2] The law in effect at the time the right to compensation accrues governs the rights and duties of the parties. *Tarnow v Railway Express Agency,* 331 Mich 558; 50 NW2d 318 (1951); *Thomas v Continental Motors Corp,* 315 Mich 27; 23 NW2d 191 (1946).

A caregiver is a third party whose expectation and right to compensation does not arise on the date the employee is injured because the third party has no right or expectation of recovery for services that have not yet been rendered. Logic dictates that the caregiver is not entitled to compensation *unless or until* service is rendered. Attendant care services may be provided at any time following the injury, e.g., one day after the injury or, in some circumstances, not until years following the injury. As a result, I believe that the caregiver's right to compensation accrues as services are rendered and that the law in effect on the date that service is provided governs the caregiver's right to compensation, subject to a determination of whether any subsequent amendments are procedural/remedial or substantive in nature.[3]

B

Application of this rule in *Mullins* and *Riza*[4] would dictate that plaintiffs be awarded compensation without regard to the fifty-six-hour limitation[5] until the effective date of the statute.[6] After the effective date, plaintiffs' rights would be subject to the fifty-six-hour limitation because the rights accrue as service is provided. Similarly, in *Sokolek,* plaintiff would not be limited by the one-year-back

[3] See part i(c).

[4] I apply the rule for purposes of illustration only because I believe that further analysis indicates that the amendment was procedural in nature and applies retroactively. See discussion below.

[5] MCL 418.315(1); MSA 17.237(315)(1).

[6] We note that the fifty-six-hour limitation is but the maximum number of hours a week for which a caregiver is entitled to compensation for attendant care services. It is not the number of hours to which a caregiver is automatically entitled. Plaintiffs must submit sufficient proofs to convince the factfinder of the number of hours of attendant care that they have provided.

rule because service was provided during the time before the amendment became effective.[7]

C

After concluding that a caregiver's right accrues as services are rendered, it is necessary to determine whether any pertinent amendments should be applied retroactively. Despite the majority's total failure to do so, I believe that deciding whether an amendment is procedural/remedial or substantive in nature is necessary and must be continued.[8] Worker's compensation should harmonize with the well-established and broadly applied rule that a procedural/remedial statute applies retroactively.[9]

The term "retroactive legislation" describes acts that operate on transactions which have occurred or rights and obligations that existed before passage of the act. 2 Singer, Sutherland Statutory Construction (5th ed), § 41.01, p 337. Provisions added by amendment that affect substantive rights will not be construed to apply retroactively unless the Legislature has clearly expressed its intent to that effect. *Hurd v Ford Motor Co,* 423 Mich 531, 535; 377 NW2d 300 (1985).

The majority readily and without explanation

---

[7] Again, I apply the rule for purposes of illustration only because I believe that this case is properly resolved by reviewing the language of MCL 418.381(3); MSA 17.237(381)(3), which directs the hearing referee and the WCAB that payments "shall not be made." This indicates legislative intent to limit the authority of the hearing referee and the WCAB in awarding the payment of benefits. See *Franks,* n 1 *supra,* p 684 (RILEY, J., concurring); *Kleinschrodt v General Motors Corp,* 402 Mich 381, 384; 263 NW2d 246 (1978) (COLEMAN, J., dissenting). Therefore, I believe that plaintiffs are limited by the one-year-back rule, making it unnecessary to reach the procedural/remedial versus substantive analysis.

[8] See, generally, *Hurd,* n 1 *supra.*

[9] See *Detroit v Walker,* 445 Mich 682; 520 NW2d 135 (1994); *Stott v Stott Realty Co,* 288 Mich 35; 284 NW 635 (1939).

overrules "sub silentio" a significant line of cases of this Court. *Ante* at 142. The well-established rule is that the law in effect at the time of the injury (in cases affecting the rights of the disabled person) or the law in effect at the time the right to compensation accrues (in cases such as the present one affecting third parties) governs the rights and duties of the parties unless the Legislature intended otherwise.[10] *Tarnow v Railway Express Agency,* 331 Mich 558; 50 NW2d 318 (1951); *Thomas v Continental Motors Corp,* 315 Mich 27; 23 NW2d 191 (1946). It is axiomatic that a statute operates prospectively unless a contrary intent is clearly manifested. *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984). However, in *Franks v White Pine Copper Div,* 422 Mich 636; 375 NW2d 715 (1985), this Court recognized an exception for statutes that were remedial/procedural in nature.[11]

Although the distinction between procedural/remedial and substantive is not always easy to discern, it is clear from the lead opinion in *White v General Motors Corp,* 431 Mich 387, 395; 429 NW2d 576 (1988), that an amendment affecting the right to receive any payment is substantive, while an amendment that merely affects the right to receive a fixed amount of compensation is procedural:

> Unlike the provision in *Selk,* § 373 involves the question whether a retired employee has a substantive right to compensation under § 373, thus directly affecting the essence of his right, and not merely calculating the amount of compensation which he may eventually receive.

[10] See n 1.

[11] See *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963); *White, supra.*

The central purpose of the fifty-six-hour amend-
ment appears to have been to *limit* the amount of
recovery in certain instances. In the present cases
of *Mullins* and *Riza,* I believe that the statutory
fifty-six-hour limitation on attendant care services,
as amended by 1985 PA 103, is procedural in
nature because it only affects the amount of com-
pensation to which claimants are entitled. *White,
supra* at 394-395. Therefore, the statute should
apply retroactively.[12]

## II

### A

I do not believe that it is necessary to remand
the *Mullins* case to the magistrate[13] to determine
"what . . . compensation is reasonable."[14] *Ante* at
145. Review of the decision of the Worker's Com-
pensation Appeal Board in this case indicates that
this issue has been resolved. Although member
Willard of the WCAB stated that plaintiff was
entitled to the prevailing wage of $3.75 an hour on
the basis of testimony elicited from a health care
expert, he apparently ordered payment at the rate

[12] I agree with n 2 of Justice BOYLE's concurrence to the extent that
it states that she does not believe these opinions are meant to be a
vehicle through which employers or insurers may recoup payments
already made to attendant caregivers.

[13] The majority remands the case to the magistrate to determine
"whether it would be appropriate to award at least part of the extra
expense required to hire a home companion from a nursing agency."
*Ante* at 145.

[14] The statute provides:

> The employer shall furnish, or cause to be furnished, to an
> employee who receives a personal injury arising out of and in
> the course of employment, reasonable medical, surgical, and
> hospital services and medicines, or other attendance or treat-
> ment recognized by the laws of this state as legal, when they
> are needed. [MCL 418.315(1); MSA 17.237(315)(1).]

of $7.25 an hour.[15] The conclusion of the home health care expert should have been controlling. Findings of fact of the Worker's Compensation Appellate Commission are conclusive upon appellate review and may not be set aside by this Court if they are supported by *any* competent evidence. *Holden v Ford Motor Co,* 439 Mich 257, 263; 484 NW2d 227 (1992). I do not believe that there is any competent evidence, analysis, or otherwise to support the order of the WCAB. In fact, the testimony, which was found as fact by two members of the panel, was wholly inconsistent with the order. Therefore, I believe that the rate payable to the attendant caregivers should be the rate consistent with the testimony of the home health care expert.

The Court of Appeals affirmed the WCAB stating that plaintiff's wife and daughter should be compensated at the rate payable to an individual because they do not incur the same expenses as an agency. Therefore, it is unnecessary to remand this case for further fact finding. This determination is inherent in the WCAB's finding that $3.75 an hour was the then usual and customary rate of a nurse's aide.

---

[15] The order of the WCAB stated that attendant care services were to be paid at the rate of $7.25 an hour. A dissenting member of the three-member panel agreed with member Willard's following statement:

> Home health care expert Hoffner testified that the prevailing wage actually received by an attendant caregiver in 1984 and 1985 *was the same whether the caregiver was obtained through an agency or not.* Therefore, *we find as fact* that $3.75 per hour was the usual and customary wage for attendant care in 1984 and 1985. Defendant is not required to pay an administrative fee (that rendered an agency rate of $7.00 and $7.25 per hour in 1984 and 1985 respectively) to plaintiff's wife and daughter. [*Mullins v Frank H Wilson Co,* 1991 WCABO 331, 335 (emphasis added).]

Incredibly, this same member apparently ordered compensation to be paid at the rate of $7.25 an hour in direct contradiction of his finding of fact.

B

Finally, I address the propriety of a cost-of-living increase. In *Kosiel v Arrow Liquors Corp,* 446 Mich 374, 390-391; 521 NW2d 531 (1994), I stated:

> [M]odification of the benefits award was inappropriate to the extent that its basis lay with the desires of plaintiff's husband and not with changes in her condition. Furthermore, it is inappropriate to validate the notion that plaintiff, defendant, and the bureau were unable to conceive of the concept of inflation at the time the award was made. Thus, the failure to account for possible inflation constitutes a factual error that does not supersede an application of the res judicata doctrine.

However, in *Mullins,* the hearing referee held that attendant care was owed according to a schedule that stated that after September 10, 1985, the yearly rate was *subject to cost-of-living increases.* The hearing referee specifically anticipated inflation by setting up a schedule, while ordering that the award was subject to cost-of-living increases. However, I believe that cost-of-living increases are properly considered when determining the prevailing wage for an attendant caregiver. In this manner, caregivers are entitled to the prevailing wage when services are rendered.

III

A caregiver's right to compensation accrues as services are rendered and the law in effect on that date, subject to a determination whether any amendments are procedural in nature, should govern the caregiver's claim. However, in *Sokolek,* § 381(3) provides that payments "shall not be

made," indicating a legislative intent to limit the hearing referee and the WCAB's authority to award benefits. The fifty-six-hour limitation of § 315 in *Mullins* and *Riza* properly should be considered procedural in nature. Therefore, the statute applies retroactively to limit plaintiffs' compensation to fifty-six hours a week. Additionally, it is unnecessary to remand *Mullins* to determine whether the hourly wage is appropriate. A health care expert testified with regard to the prevailing wage. The prevailing wage includes considerations that the majority would remand to redetermine.

For these reasons, I would reverse the decisions of the Court of Appeals in *Sokolek* and *Mullins* and affirm in *Riza*.

WEAVER, J., concurred with RILEY, J.

CAVANAGH, J. I dissent. I believe that the date of injury fixes a claimant's entitlement to attendant or nursing care as provided by MCL 418.315(1); MSA 17.237(315)(1).

> [A]mendatory acts affecting questions of eligibility have been applied prospectively so as to apply to injury dates occurring on or after the effective date of the provision. *Thus, an injured worker's right to benefits accrues on the date of injury, and the law in effect at the time of the work-related injury is controlling.* [*Dow Chemical Co v Curtis*, 431 Mich 471, 495; 430 NW2d 645 (1988) (CAVANAGH, J., dissenting) (citations omitted, emphasis added).]

Here, as in *Dow Chemical*, it is on the date of injury that the injured worker's rights became fixed because it is the injury itself that gives rise to the entitlement to benefits.

Accordingly, the decision of the Court of Appeals

in *Riza* should be reversed and the decisions in
*Mullins* and *Sokolek* should be affirmed. An in-
jured worker's right to benefits accrues on the date
of injury, and the law in effect at the time of the
work-related injury is controlling.